**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MICHAEL CARL GEORGE,
<u>Petitioner-Appellant,</u>

v.

No. 96-1

RONALD J. ANGELONE, Director,
Virginia Department of Corrections,
<u>Respondent-Appellee.</u>

MICHAEL CARL GEORGE,
<u>Petitioner-Appellee,</u>

v.

No. 96-3

RONALD J. ANGELONE, Director,
Virginia Department of Corrections,
<u>Respondent-Appellant.</u>

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert R. Merhige, Jr., Senior District Judge.
(CA-95-1-3)

Argued: September 25, 1996

Decided: November 14, 1996

Before WILKINSON, Chief Judge, and WILKINS and
WILLIAMS, Circuit Judges.

_____

Affirmed in part and modified in part by published opinion. Judge
Wilkins wrote the opinion, in which Chief Judge Wilkinson and
Judge Williams joined.

**COUNSEL**

**ARGUED:** Stephen Atherton Northup, MAYS & VALENTINE, Richmond, Virginia, for Appellant. John H. McLees, Jr., Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellees. **ON BRIEF:** Gerard J. Roerty, Jr., MAYS & VALENTINE, Richmond, Virginia; Mark Evan Olive, Donald R. Lee, VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER, Richmond, Virginia, for Appellant. James S. Gilmore, III, Attorney General of Virginia, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellees.

_____

**OPINION**

WILKINS, Circuit Judge:

Michael Carl George appeals a decision of the district court dismissing his petition for a writ of habeas corpus. George v. Angelone, 901 F. Supp. 1070 (E.D. Va. 1995); see 28 U.S.C.A. § 2254 (West 1994).[1] George's petition challenged his Virginia conviction for capital murder and his resulting death sentence. The Commonwealth[2] cross-appeals the decision of the district court dismissing without prejudice George's claim that he was deprived of his Sixth Amendment right to counsel by the Commonwealth's placing of an informant in his cellblock to obtain information about the murder. We affirm the decision of the district court insofar as the decision denies relief to George, but modify the dismissal of George's Sixth Amendment claim to one with prejudice.

_____

[1] We refer to § 2254 in effect prior to the passage of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214. Because we conclude that habeas relief is inappropriate under the law in effect prior to the recent amendment, we do not address the more demanding standards imposed upon George under the new Act. See Sherman v. Smith, 89 F.3d 1134, 1142 n.1 (4th Cir. 1996) (en banc).

[2] George named Ronald J. Angelone, Director of the Virginia Department of Corrections, as Respondent in his petition. For ease of reference, we refer to Respondent as "the Commonwealth" throughout this opinion.

2

I.

On Saturday, June 16, 1990, Alexander Eugene Sztanko, then 15 years of age, traveled with his parents from their new home in Manassas, Virginia, to their former residence in Woodbridge, Virginia in order to remove some items that the family had left there.**3** Sztanko left the Woodbridge residence at approximately 2:00 p.m. for a ride on his motorcycle, proceeding down a power-line easement and into a nearby wooded area. As Sztanko rode through the woods, George drew Sztanko's attention. He stopped the boy and grabbed him from the motorcycle, dragging him farther into the woods. George handcuffed Sztanko to a tree, sodomized the boy, and tortured him by repeatedly applying a stun gun to his genitals. Finally, George fired a nine millimeter pistol into the boy's head, killing him. Sztanko's parents reported hearing the sound of gunfire coming from the woods within an hour of Sztanko's departure. At some point, either before or after the murder, George secreted Sztanko's motorcycle and helmet approximately 20 feet off of the path in the woods and marked a topographical map with an "X" signifying the location of Sztanko's body and an "O" corresponding to the site where the motorcycle was hidden.

The following day, a Prince William County law enforcement officer, who was aware that Sztanko was missing, noticed a blue and silver sport utility vehicle parked near the woods. Having observed the same vehicle at that location at approximately 3:30 p.m. on the previous day, the officer approached the vehicle and, through communications with the Department of Motor Vehicles, learned that it was registered to George. Soon afterward, an individual later identified as George approached the officer on foot. Before reaching the officer, however, George turned and ran along the side of the road and into the woods. After entering the woods, George knelt down for a few seconds and then proceeded farther into the woods, crouching as though he did not wish to be seen. Ultimately, George stood and walked toward the officer again.

_____

**3** The facts are presented in the light most favorable to the Commonwealth. See Jackson v. Virginia, 443 U.S. 307, 319 (1979).

3

The officer confronted George, who identified himself and explained that he was attempting to locate a place to hunt for turkeys. George was dressed completely in camouflage clothing, including a hat and black gloves, despite a temperature in the eighties; he was visibly shaking and sweating profusely. The officer questioned George concerning whether he had been in the area on the previous day. Although George first offered a categorical denial, when the officer challenged him, George admitted that, in fact, he had been there the day before. The officer placed George under arrest for trespassing and called for assistance. George was carrying a knife, the topographical map marking the locations of the motorcycle and Sztanko's body, and keys--including a handcuff key.

After proceeding into the woods to the location where he had observed George kneel down, the officer discovered a pair of tennis shoes that were later identified as Sztanko's. A bloodhound that was brought to the scene led law enforcement officers from the shoes to George's vehicle and then into the woods to Sztanko's body.

The Commonwealth tried George on charges of capital murder based on the murder in the commission of a robbery while armed with a deadly weapon, see Va. Code Ann. § 18.2-31(4) (Michie Supp. 1989), and of robbery, abduction with intent to defile, and use of a firearm in the commission of a capital murder. Trial testimony concerning the autopsy performed on Sztanko's body revealed that death had resulted from a single gunshot wound to the head. Expert testimony established that a nine millimeter pistol seized during a search of George's bedroom fired the fatal shot. In addition, abrasions discovered on Sztanko's genitals were consistent with electrical burning, and expert testimony revealed that these injuries were inflicted while the boy was alive and that they would have proven extremely painful. An expert also testified that a stun gun seized from George's vehicle was capable of producing burns consistent with those found on Sztanko's body.

Evidence from laboratory analysis disclosed the presence of seminal fluid on the boy's shirt and thigh, but the origin of this substance could not be identified. However, seminal fluid consistent with George's and inconsistent with Sztanko's was located on swabs from Sztanko's pubic area and on George's underwear. Blood stains on

4

George's pants were consistent with Sztanko's blood, but inconsistent with George's, and fibers located on the boy's shirt were consistent with the material of George's camouflage jacket.

The jury convicted George of all charges and imposed a sentence of death on the capital murder conviction, finding as aggravating predicates both that George would prove a future danger to society and that George's murder of Sztanko was outrageously or wantonly vile. See Va. Code Ann. § 19.2-264.2 (Michie 1995).**4** George's convictions and death sentence were upheld on direct appeal, George v. Commonwealth, 411 S.E.2d 12 (Va. 1991), and the Supreme Court denied his petition for certiorari on April 6, 1992, George v. Virginia, 503 U.S. 973 (1992).

Thereafter, George filed a petition for a writ of habeas corpus in state court. The state habeas court denied and dismissed the petition, concluding that each of George's claims--with the exception of his claim of ineffective assistance of counsel--was barred either because it was raised on direct appeal (and therefore was not cognizable in state habeas proceedings) or was procedurally defaulted by the failure to properly raise the claim during the trial and on direct appeal. The state habeas court found that George's claim that he was denied effective assistance of counsel was without merit. The Supreme Court of Virginia denied George's petition for review, and again the Supreme Court denied George's petition for a writ of certiorari.

_____

**4** In order to be eligible for the death penalty in Virginia, a defendant must be found guilty of capital murder (here, murder in the commission of a robbery while armed with a dangerous weapon). After finding the defendant guilty of capital murder, the jury must also "find that there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing serious threat to society" (the future dangerousness predicate) or that the defendant's "conduct in committing the offense for which he stands charged was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind or an aggravated battery to the victim" (the vileness predicate). Va. Code Ann. § 19.2-264.2. If a jury finds neither of the aggravating factors, it may not sentence the defendant to death, but if it finds one or both of the aggravating circumstances, it has authority to sentence the defendant to either life or death. See Tuggle v. Netherland , 116 S. Ct. 283, 284 n.1 (1995) (per curiam).

In June 1995, George filed the present petition for habeas corpus relief in the district court. The district court dismissed the petition, holding that some of the claims were procedurally defaulted and that the remainder lacked merit. See George, 901 F. Supp. at 1078-90. George moved pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend the judgment, asking the district court to alter its judgment to dismiss without prejudice his claim that the trial testimony of his fellow inmate was obtained in violation of his Sixth Amendment right to counsel. George maintained that this claim had not been exhausted, so a dismissal to permit the state court to consider it in the first instance was appropriate. The district court obliged George and altered its judgment to make the dismissal of his Sixth Amendment claim without prejudice.

George now appeals the decision of the district court dismissing his petition, and the Commonwealth appeals the decision of the district court dismissing the Sixth Amendment claim without prejudice.

II.

George first maintains that the evidence that he committed the murder in the commission of a robbery while armed with a deadly weapon was constitutionally insufficient.[5]  See Jackson v. Virginia, 443 U.S. 307, 317-18 (1979) (conviction that is unsupported by sufficient evidence violates Due Process Clause of the Fourteenth Amendment). Although not disputing that he murdered Sztanko, George contends that the evidence was insufficient to permit a reasonable trier of fact to conclude beyond a reasonable doubt (1) that he robbed Sztanko of any property or (2) that the robbery was a motivating factor for the murder.[6]

_____

[5] The only conviction supporting the imposition of the death penalty was the one for murder in the commission of a robbery while armed with a deadly weapon. Thus, if George were able to show that the evidence was insufficient to support that conviction, his death sentence could not stand.

[6] This issue is not procedurally defaulted because George raised the sufficiency of the evidence to sustain his capital murder conviction on direct appeal. See George, 411 S.E.2d at 20-22.

To determine whether the evidence is sufficient to support George's conviction for capital murder in the commission of a robbery while armed with a deadly weapon, this court must determine, taking the evidence presented in the light most favorable to the Commonwealth, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Id. at 318. This analysis does not require that the court determine whether it believes that the evidence established George's guilt beyond a reasonable doubt, but rather whether a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 318-19.

Under Virginia law, a robbery is "`the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation.'" George, 411 S.E.2d at 20 (quoting Pierce v. Commonwealth, 138 S.E.2d 28, 31 (Va. 1964)). A "[m]urder in the commission of a robbery is a killing which takes place before, during, or after the robbery and is so closely related thereto in time, place, and causal connection as to make the killing part of the same criminal enterprise as the robbery." Id. (citing Bassett v. Commonwealth, 284 S.E.2d 844, 851-52 (Va. 1981), cert. denied, 456 U.S. 938 (1982)); accord Hoke v. Netherland, 92 F.3d 1350, 1363 (4th Cir. 1996); Savino v. Murray, 82 F.3d 593, 601 (4th Cir.), cert. denied, 117 S. Ct. 1 (1996). And, in order for a murder to have been committed in the commission of a robbery within the meaning of Virginia law, the robbery must have been one of the motivating factors for the killing. George, 411 S.E.2d at 21-22 (citing Branch v. Commonwealth, 300 S.E.2d 758, 760 (Va. 1983)); accord Whitley v. Commonwealth, 286 S.E.2d 162, 166 (Va.), cert. denied, 459 U.S. 882 (1982).

In our view, the evidence presented was more than adequate to permit a rational jury to conclude that George robbed Sztanko of his motorcycle and helmet and that the robbery was at least one of the factors motivating the murder.[7] George's fellow inmate, Roger Settle, testified that George told him that he had "grabbed" Sztanko "and

_____

[7] Because we find that the evidence is sufficient with respect to the motorcycle and helmet, we need not consider the evidence concerning the other items the Commonwealth asserted George stole--Sztanko's wallet, money, and shoes.

7

dragged him off of his bike." J.A. 295. The motorcycle and helmet were discovered on the evening of the murder by a group of young people at a location 20 to 22 feet from the path in the woods in a spot where the items could not readily be observed. The ground between the path and the location where the motorcycle was discovered bore evidence that the motorcycle had been rolled through the area, and an indentation on the ground was consistent with that left by a kickstand. The place where the motorcycle was located was approximately one-half mile from where Sztanko's body was found the following day. In addition, the topographical map of the area that was found in George's possession was marked to indicate the exact positions of the body and the motorcycle.

From this evidence, a reasonable jury could conclude that when George first observed Sztanko he was in possession of valuable assets; that George removed the boy from the motorcycle by force with the intent of stealing it and the helmet; and that George took Sztanko into the woods, murdered him, and then returned to secrete the motorcycle and helmet with the intention of returning the following day to retrieve the items, marking their location on the topographical map. This evidence amply supports a conclusion that robbery was a motive in the killing. Compare Branch, 300 S.E.2d at 759-60 (holding evidence insufficient to support capital murder conviction when defendant shot victim during an argument at the victim's home and after dragging body to bedroom, defendant removed wallet and clothing; evidence showed that defendant "was motivated by no other purpose than to cover up the crime he had committed" and hence "that the violent killing and the unlawful taking were two separate acts") with Whitley, 286 S.E.2d at 166 (rejecting defendant's contention that "the jury should have found that the killing was the act of a `sexual psychopath' and that the larceny was committed `only as an after-thought'" and holding that the evidence that defendant had taken victim's automobile and other items after he had sexually assaulted and murdered her was sufficient to permit jury to conclude that robbery was in part the motive for the murder). We therefore conclude that the evidence was sufficient to support George's conviction for capital murder.

III.

George next challenges the closing argument made by the prosecution at the end of the guilt phase of his trial. He contends that the

8

argument contained improper victim-impact information and so tainted his trial that he was deprived of his right to due process under the Fourteenth Amendment. Thus, he argues, his capital murder conviction and sentence must be set aside. We disagree.

A prosecutor's comments may "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). For a prosecutor's remarks to have done so, the "comments must, in fact, have been improper," and they "must have so prejudiced the defendant's substantial rights that the defendant was denied a fair trial." <u>United States v. Morsley</u>, 64 F.3d 907, 913 (4th Cir. 1995), <u>cert. denied</u>, 116 S. Ct. 749 (1996); <u>accord Bennett v. Angelone</u>, 92 F.3d 1336, 1345-47 (4th Cir. 1996). We first consider whether the prosecutor's argument was improper.

During his closing argument to the jury during the guilt phase of the trial, the prosecutor representing the Commonwealth stated:

> There are three groups that I would ask you to consider in deciding what is appropriate in this case and . . . what his [George's] punishment should be.
>
> The first group of people consist of Alex himself and the victims like him and really all of the children in this community. There has been a loss which cannot be replaced. That is so obvious that it should not even have to be said. One less boy on the football field. . . . One less boy to be coached. One less kid whose heartbeat is quickened by the sight of a pretty girl. There will be less laughter in the hallways of his school. There will be one less young man to grow to adulthood and follow in the footsteps and the example that his father has set for him. . . .
>
> You have to consider that loss. It is not replaceable. . . . I would ask you to consider a second group of people.
>
> The mother and father of this young man and all of the parents in this. . . . You have a mother and a father who you

9

saw here during the course of this trial. You have to think about them. You should think about them in fixing punishment in these cases. A father who works his entire life to provide opportunities for his son. Who watches him grow, develop in a way he would like him to.

A mother who goes down into the very shadow of death to give life to a new human being. Who watches him from afar with tenderness and kindness and who goes in despair when Michael George pulls the trigger.

And, finally Ladies and Gentlemen, I would ask you to think about folks like yourselves and Mr. Ebert and me and all of the people in this Court, who have an obligation to protect the children of this community.

J.A. 410-13. George contends that this argument is contrary to Virginia law because it amounted to an improper comment on the impact of the crime on the victim and the victim's family. See McReynolds v. Commonwealth, 15 S.E.2d 70, 74-75 (Va. 1941); Dingus v. Commonwealth, 149 S.E. 414, 415 (Va. 1929); see also Weeks v. Commonwealth, 450 S.E.2d 379, 389-90 (Va. 1994) (holding that victim-impact evidence is inadmissible during the sentencing phase of a capital trial), cert. denied, 116 S. Ct. 100 (1995).

Clearly, the Supreme Court of Virginia has forbidden the Commonwealth from presenting argument relating to the guilt of a defendant based upon victim-impact evidence. See Bennett, 92 F.3d at 1348 (citing Weeks, 450 S.E.2d at 389; McReynolds, 15 S.E.2d at 75; Dingus, 149 S.E. at 414-15). The Virginia courts reason that the prohibition on such argument is necessary because facts relevant only to the impact of the crimes on its victims and their relatives "`in no way assist[ ] in determining either the guilt or the innocence of the accused'"; in other words, the victim-impact evidence is irrelevant to guilt, and "`[f]acts which cannot be proved, because irrelevant, can afford no proper basis for argument.'" Dingus , 149 S.E. at 415 (quoting Parsons v. Commonwealth, 121 S.E. 68, 73-74 (Va. 1924)).

Although the argument of which George complains was presented at the close of the guilt phase of the trial, in Virginia this is the phase

10

of the trial during which the jury recommends punishment for the noncapital offenses. See George, 411 S.E.2d at 22-23. And, it is clear that the argument made by the prosecution related to the proper punishment to be imposed on the noncapital offenses rather than to the question of guilt or innocence. After the Commonwealth argued the evidence supporting conviction, the prosecutor explained to the jury that if it convicted George of capital murder, there would be a separate proceeding in which the Commonwealth would be permitted to present additional evidence and argue in favor of the death penalty, but that the jury would fix the penalty for the noncapital offenses during its deliberations on guilt. The prosecutor then stated, "There are three groups that I would ask you to consider in deciding what is appropriate in this case and . . . what his punishment should be." J.A. 410. Further, on each occasion when George's attorney objected to the prosecution's victim-impact argument, the Commonwealth stated that the argument was relevant to the appropriate punishment for the noncapital offenses. J.A. 411 ("[T]he impact of this crime and the results of this crime, we are allowed to argue to the Jury so that they may consider the detrimental effects as well as the detrimental punishment in deciding the case."); J.A. 412 ("Judge, it is the same response that I had before. It goes to the sentencing on the other charges.") And, the trial judge permitted the argument to continue, ruling that there were "multiple charges, [on] some of which sentence will be fixed at this time." J.A. 412. Most significantly, on direct appeal the Supreme Court of Virginia considered and rejected George's argument that the prosecutor's remarks were improper under state law. George, 411 S.E.2d 22-23. The court characterized the issue as "whether it was improper for the prosecutor to argue for punishment on the non-capital offenses that took into account Alex Sztanko's human qualities and the impact of his death" and held that it was not. Id. at 23. Of course, the Supreme Court of Virginia is the final authority on the question of whether the prosecutor's argument violated state law.**8** See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

_____

**8** Lacking authority under state law that an argument like the one employed by the prosecutor is improper, George points to Payne v. Tennessee, 501 U.S. 808, 825 (1991), in which the Supreme Court overruled Booth v. Maryland, 482 U.S. 496 (1987), and South Carolina v. Gathers, 490 U.S. 805 (1989), and held that the Eighth Amendment did

11

Moreover, even if George had demonstrated that the argument was improper, we would not be persuaded that it denied him a fair trial. Morsley, 64 F.3d at 913. In determining whether the argument prejudiced George's substantial rights, this court looks to:

>"(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused;
>
>(2) whether the remarks were isolated or extensive;
>
>(3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and
>
>(4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters."

Id. (quoting United States v. Mitchell , 1 F.3d 235, 241 (4th Cir. 1993)).

Applying these factors, we are convinced that George was not prejudiced. The argument had, at most, a very minimal possibility of misleading the jury with respect to George's guilt on the capital murder charge, even if it had been improper, because the prosecutor made clear that the argument was directed to the appropriate punishment for the noncapital offenses. And, the remarks of which George complains

_____

not prohibit the introduction of victim-impact evidence during the penalty phase of a capital trial. George contends that the Payne Court left open the possibility that a prosecutor's victim-impact argument, though not transgressing the Eighth Amendment, nevertheless might violate the Fourteenth Amendment's due process guarantees as set forth in Darden v. Wainwright, 477 U.S. 168 (1986). See Payne, 501 U.S. at 825. In reaching its holding in Payne, however, the Court recognized "that a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant." Id. In light of this recognition, we hold that the argument made by George's prosecutor was well within the compass of acceptable argument.

12

were a very small part of the closing argument made at the end of the guilt phase of the trial, comprising only two of twenty-two and one-half pages (excluding the colloquy on George's objections to the argument) of the transcription of the Commonwealth's closing argument. Further, and importantly, the evidence that George committed the murder was truly overwhelming. Finally, nothing supports a conclusion that the prosecutor attempted to place the argument before the jury for any improper purpose; instead, the record is entirely consistent with the prosecutor's attempt to argue in favor of full punishment for the noncapital offenses. Thus, the prosecution's victim-impact argument did not infect George's trial or sentencing proceeding with unfairness so as to deprive him of due process.

IV.

George next asserts that the introduction during the guilt phase of the trial of evidence regarding his "homosexual defilement" of Sztanko created an impermissible risk that his conviction and sentence were the product of passion, prejudice, and arbitrary factors and, therefore, were violative of his Fourteenth Amendment right to due process of law. See Romano v. Oklahoma, 114 S. Ct. 2004, 2012 (1994). George refers to evidence relating to two different topics under the umbrella of "homosexual defilement"--the evidence of his torture of Sztanko with the stun gun and the evidence that he sodomized the boy. For the introduction of this evidence to have rendered his conviction or sentence violative of the Fourteenth Amendment, we must be convinced that the admission of this evidence "so infected the . . . proceeding with unfairness as to render the jury's [conviction or] imposition of the death penalty a denial of due process." Id. We are not so persuaded.

The evidence to which George points was properly admissible under state law, as the Supreme Court of Virginia ruled on direct appeal. Compare McGuire, 502 U.S. at 67-68 (emphasizing "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and rejecting habeas petitioner's argument that the introduction of evidence violated his Fourteenth Amendment right to due process upon concluding that the California Court of Appeal had ruled the evidence properly admitted),

13

with Romano, 114 S. Ct. at 2012 (analyzing whether evidence of prior capital conviction and death sentence, which the Oklahoma Supreme Court held to have been improperly admitted at a capital sentencing hearing, so tainted the proceeding as to be violative of due process and concluding that it did not); cf. Morsley, 64 F.3d at 913 (explaining that the first step in analysis of whether prosecutor's argument violated due process is whether the remarks were improper). The evidence of the injuries to Sztanko's genitals from the stun gun and the recovery of the stun gun from George's vehicle, along with Settle's testimony that George had confessed to using the stun gun on the boy's "private parts," was relevant to the identification of George as the perpetrator of the capital murder. George , 411 S.E.2d at 16, 19 (holding that stun gun evidence was relevant to the capital murder charge and not unduly prejudicial). And, the evidence that George sodomized Sztanko was relevant to the charge of abduction with the intent to defile. See Scott v. Commonwealth, 323 S.E.2d 572, 576-77 (Va. 1984) (holding that evidence that defendant raped victim was relevant to show intent for abduction with intent to defile and noting that "[w]here a course of criminal conduct is continuous and interwoven, consisting of a series of related crimes, the perpetrator has no right to have the evidence `sanitized' so as to deny the jury knowledge of all but the immediate crime for which he is on trial"). Moreover, during the sentencing phase, the evidence of which George complains demonstrated the circumstances surrounding his murder of Sztanko.**9** George, 411 S.E.2d at 23-34. It is difficult to conceive of evidence more relevant to the determination of whether the murder was outrageously or wantonly vile or whether George would prove a future danger to society--the aggravating predicates for imposition of the death penalty. See Royal v. Commonwealth, 458 S.E.2d 575, 577-78 (Va. 1995), cert. denied, 116 S. Ct. 823 (1996); Va. Code Ann. § 19.2-264.2. Because this evidence was properly admitted during the guilt phase of the trial, and properly considered by the jury during the capital sentencing deliberations, we cannot conclude that it so tainted the proceedings with unfairness as to render George's capital conviction or sentence violative of due process.**10** See McGuire, 502 U.S. at

_____

**9** Although this evidence was introduced during the guilt phase of the proceedings, not the sentencing phase, the prosecutor referred to this evidence during closing arguments at the sentencing phase.

**10** The district court erred in holding that this issue was procedurally defaulted. George argued on direct appeal that the introduction of the

14

70 (ruling that introduction of evidence did not violate due process guarantee of the Fourteenth Amendment upon determining that evidence was properly admitted).

V.

George next contends that the instruction on the vileness predicate given to the jury that sentenced him to death was unconstitutionally vague as applied to him. See generally Godfrey v. Georgia, 446 U.S. 420 (1980) (reversing death sentence because aggravating factor that murder "was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravating battery to the victim" was unconstitutionally vague and had not been given a constitutionally limited construction by the Supreme Court of Georgia) (internal quotation marks omitted); Tuggle v. Thompson, 57 F.3d 1356, 1371-74 (4th Cir.), vacated on other grounds sub nom. Tuggle v. Netherland, 116 S. Ct. 283 (1995). He claims that the charge on the vileness predicate was identical to the one held unconstitutionally vague by the Godfrey Court[11] and further that the vileness predicate

_____

stun gun evidence during the guilt phase of his trial violated the due process protections of the Fourteenth Amendment because it was irrelevant and unduly prejudicial. Similarly, George maintained on direct appeal that the introduction of evidence of "homosexual defilement" resulted in the arbitrary and capricious imposition of the death sentence in violation of the Due Process Clause of the Fourteenth Amendment. Because the substance of these claims was presented to the Supreme Court of Virginia on direct appeal, they are not procedurally defaulted. See Gray v. Netherland, 116 S. Ct. 2074, 2081 (1996); Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam).

[11] The trial judge charged the jury:

> Before the penalty can be fixed at death, the Commonwealth must prove beyond a reasonable doubt at least one of the following two alternatives.
>
> First, that after consideration of his history and background there is a probability that he would commit criminal acts of violence that would constitute a continuing serious threat to society, or [second], that his conduct in committing the offense was out-

15

was not given the constitutionally limited construction approved by the Supreme Court of Virginia in <u>Smith v. Commonwealth</u>, 248 S.E.2d 135, 149 (Va. 1978), <u>cert. denied</u>, 441 U.S. 967 (1979), either by the jury through a proper instruction or by application of the limiting construction on direct appeal.

We need not address George's claim that the instructions provided to the jury with respect to the vileness predicate were constitutionally deficient because any error was harmless. Even if the instruction on the vileness predicate failed to constitutionally channel the discretion of the jury in imposing the death sentence, there is no question but that the finding that George was guilty of capital murder, coupled with the finding of the future dangerousness predicate, did so. <u>See</u> <u>Zant v. Stephens</u>, 462 U.S. 862, 885-89 (1983); <u>accord Tuggle v.</u> <u>Netherland</u>, 116 S. Ct. 283, 285 (1995) (per curiam). As in <u>Zant</u>, if the vileness aggravator is invalid, it is so only because "`it fails to provide an adequate basis for distinguishing a murder case in which the death penalty may be imposed from those cases in which such a penalty may not be imposed. The underlying evidence is nevertheless fully admissible at the sentencing phase.'" <u>Tuggle</u>, 116 S. Ct. at 285 (quoting <u>Zant</u>, 462 U.S. at 886). Moreover, the Supreme Court of Virginia reviewed George's "death sentence to determine whether it was arbitrary, excessive, or disproportionate" and concluded that it was not. <u>Zant</u>, 462 U.S. at 879-80; <u>George</u>, 411 S.E.2d at 23-24. Accordingly, any error in the jury instruction on the vileness predicate does not provide a basis for granting a writ of habeas corpus because the sentence still rests on firm ground.

_____

rageously or wantonly vile, horrible or inhuman in that it involved torture or depravity of mind.

If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt either of the two alternatives and as to that alternative you are unanimous, then you may fix the punishment of the Defendant at death, or, if you believe from all the evidence that the death penalty is not justified, then you shall fix the punishment of the Defendant at life imprisonment.

J.A. 533.

16

VI.

In his final claim, George asserts that the testimony of Roger Settle --a fellow inmate of George's who testified during the trial as to admissions concerning the murder that George had made to him while the two were incarcerated together--was obtained in violation of his Sixth Amendment right to counsel because Settle was placed in George's cellblock by the Commonwealth to obtain information against him.**12** See United States v. Henry, 447 U.S. 264, 269-75 (1980); Massiah v. United States, 377 U.S. 201, 205-07 (1964). The district court ruled that because George had never raised this claim either on direct appeal or in his state habeas proceeding, the claim was unexhausted. As a result, the court initially decided, the claim was procedurally defaulted; the district court dismissed the claim because George could not demonstrate cause and prejudice to excuse the default.**13** See Gray v. Netherland, 116 S. Ct. 2074, 2080 (1996); Coleman v. Thompson, 501 U.S. 722, 750 (1991). Thereafter, George asked the court to reconsider this ruling and to dismiss the claim without prejudice so as to permit him to raise it in state court.

George concedes that he has never presented the Sixth Amendment claim to the Virginia courts and hence that the claim is unexhausted. A federal court may not grant a writ of habeas corpus to a state prisoner unless the petitioner has exhausted his state remedies. 28 U.S.C.A. § 2254(b). A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture. Gray, 116 S. Ct. at 2080.

Under Virginia law, "a petitioner is barred from raising any claim in a successive petition if the facts as to that claim were either known `or available' to petitioner at the time of his original petition." Hoke, 92 F.3d at 1354 n.1; Barnes v. Thompson, 58 F.3d 971, 974 (4th Cir.), cert. denied, 116 S. Ct. 435 (1995); see Waye v. Murray, 884 F.2d

_____

**12** The Commonwealth has unequivocally denied that Settle was a state agent.

**13** George concedes that he can offer no claim of actual innocence. See Schlup v. Delo, 115 S. Ct. 851, 865-76 (1995).

17

765, 766 (4th Cir.) (per curiam), cert. denied, 492 U.S. 936 (1989); Va. Code Ann. § 8.01-654(B)(2) (Michie Supp. 1996). George contends that the facts supporting his Massiah/Henry claim were actually unknown to him until an investigator who was assisting him in the preparation of his federal habeas corpus petition discovered them. Further, he maintains that he could not have discovered the facts supporting his Sixth Amendment claim prior to the filing of the state habeas petition because his state habeas counsel had only one month following his appointment in which to investigate all of his claims. These allegations, however, are completely inadequate to demonstrate that the facts upon which George bases his Sixth Amendment claim were unavailable to him when he filed his state habeas petition.

George failed to allege even a hint as to what information he discovered that led him to believe that Settle's testimony was obtained in violation of the Sixth Amendment, how that information was discovered, or why this information could not have been unearthed prior to the filing of his state habeas petition. In response to questioning at oral argument, counsel for George finally asserted that the information was obtained in interviews with Settle and an unnamed fellow inmate of Settle's. But, George fails to explain why reasonably diligent counsel would not have been able to obtain the same information prior to filing George's state habeas petition. Cf. Barnes, 58 F.3d at 976-77 (holding that because facts underlying claim could have been obtained by reasonably diligent counsel through interview of witnesses at any time prior to filing state petition, finding by Virginia habeas court that claim was procedurally defaulted was supported by record).

The only excuse George offers for why counsel would not have been able to discover the facts supporting his Sixth Amendment claim is the one-month time constraint placed upon his state habeas counsel for filing his petition. This fact, however, wholly fails to sustain a conclusion that reasonably diligent counsel could not have discovered the information without some explanation for why one month was an insufficient amount of time to conduct the investigation necessary to uncover the facts. And, George offers no explanation for why the information he has now discovered during the interview of Settle could not have been unearthed within the time period counsel had available in which to prepare the state petition.

18

Furthermore, the limited time frame available to counsel to prepare George's state petition was directly attributable to George's failure to request counsel earlier. The United States Supreme Court denied George's petition for a writ of certiorari to review the decision of the Supreme Court of Virginia in his direct appeal on April 6, 1992. Despite the Commonwealth's September 1992 warning that it would seek an execution date if George did not request appointment of counsel to represent him in state postconviction proceedings, he delayed in applying for the appointment of counsel until February 24, 1993-- a period of over ten months after his conviction became final. Thus, even assuming that reasonably diligent counsel could not have discovered the information on which George now relies within a one-month period, the restrictive time frame under which counsel was operating was entirely of George's creation and thus does not constitute a factor external to the defense. Accordingly, we conclude that George's Sixth Amendment claim would be procedurally defaulted if he attempted to raise it in state court at this juncture.

Having determined that George's Sixth Amendment claim is procedurally defaulted in the Virginia courts, we recognize that "the procedural bar which gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." Gray, 116 S. Ct. at 2080. George argues that cause and prejudice exist.

In order to demonstrate cause for the default, George must establish "that some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court at the appropriate time. Murray v. Carrier, 477 U.S. 478, 488 (1986). George asserts that the factual basis for a claim was reasonably unavailable to his state habeas counsel when he filed his state petition. See id. (noting "that a showing that the factual . . . basis for a claim was not reasonably available" constitutes cause). But, for the reasons set forth above, George's showing is insufficient to permit this court to conclude that the factual basis for his claim was unavailable. Consequently, cause does not exist to excuse George's procedural default of his Sixth Amendment claim. Since it is clear that George's Massiah/Henry claim is without merit, the district court erred in dismissing this claim

19

without prejudice.**14** <u>See Granberry v. Greer</u>, 481 U.S. 129, 135 (1987) (explaining that when it is clear that an unexhausted claim asserted by a state habeas petitioner lacks merit, federal habeas court should dismiss the claim on the merits).

VII.

For the reasons set forth above, we affirm the dismissal of George's habeas corpus petition by the district court. However, because the district court erred in failing to dismiss George's Sixth Amendment claim with prejudice as procedurally defaulted, we so modify the judgment.

<u>AFFIRMED IN PART; MODIFIED IN PART</u>

_____

**14** George argues in the alternative that because his habeas petition contained both exhausted and unexhausted claims, the district court should have dismissed the entire petition. <u>See Rose v. Lundy</u>, 455 U.S. 509, 522 (1982). We disagree. When this court concludes that an unexhausted claim would not be entertained by the state court if presented, we consider the claim to be exhausted and denied on an adequate and independent state-law ground. <u>Townes v. Murray</u>, 68 F.3d 840, 846 (4th Cir. 1995), <u>cert. denied</u>, 116 S. Ct. 831 (1996); <u>see Gray</u>, 116 S. Ct. at 2080.