**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARK A. SHEPPARD,
Petitioner-Appellant,

v.

No. 98-12

JOHN TAYLOR, Warden, Sussex I
State Prison,
Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-97-60-3)

Argued: September 24, 1998

Decided: October 23, 1998

Before WILKINSON, Chief Judge, and WILKINS and
NIEMEYER, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Wilkins wrote the opinion,
in which Chief Judge Wilkinson and Judge Niemeyer joined.

_____

**COUNSEL**

**ARGUED:** Dana Johannes Finberg, MEZZULLO & MCCAND-
LISH, Richmond, Virginia, for Appellant. Donald Richard Curry,
Senior Assistant Attorney General, OFFICE OF THE ATTORNEY
GENERAL, Richmond, Virginia, for Appellee. **ON BRIEF:** Timothy
M. Kaine, MEZZULLO & MCCANDLISH, Richmond, Virginia, for

Appellant. Mark L. Earley, Attorney General of Virginia, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

WILKINS, Circuit Judge:

Appellant Mark A. Sheppard filed this petition for habeas corpus relief[1] from his Virginia capital convictions and death sentences for the murders of Richard A. and Rebecca W. Rosenbluth. See 28 U.S.C.A. § 2254 (West 1994 & Supp. 1998). [2] The district court dismissed his petition, concluding that the majority of Sheppard's claims were procedurally defaulted and that the remaining claims lacked

_____

[1] Sheppard named J. D. Netherland, Warden of the Mecklenburg Correctional Center where Sheppard was incarcerated, as Respondent. The court has since substituted John Taylor, Warden of the Sussex I State Prison, as Respondent. For ease of reference we refer to Taylor as "the Commonwealth."

[2] Because Sheppard's petition for a writ of habeas corpus was filed on May 1, 1997, after the April 24, 1996 enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub. L. No. 104-132, 110 Stat. 1214, amendments to 28 U.S.C.A. § 2254 effected by § 104 of the AEDPA govern our resolution of this appeal. See Green v. French, 143 F.3d 865, 868 (4th Cir. 1998); see also Lindh v. Murphy, 117 S. Ct. 2059, 2067-68 (1997). We have not yet decided whether the provisions contained in § 107 of the AEDPA apply to Virginia petitioners who filed their state habeas proceedings after July 1, 1992. And, we need not consider the applicability of the provisions of § 107 of the AEDPA here because we conclude that habeas relief is inappropriate under the more lenient standards previously in effect. See Mackall v. Angelone, 131 F.3d 442, 444 n.2 (4th Cir. 1997) (en banc), cert. denied, 118 S. Ct. 907 (1998).

merit. We conclude that the district court correctly determined that Sheppard is not entitled to habeas corpus relief.

I.

Sheppard murdered Mr. and Mrs. Rosenbluth on November 28, 1993 by shooting each of them in the head inside the couple's Chesterfield County, Virginia home. When law enforcement officers discovered the Rosenbluths' bodies two days later, their house had been ransacked and many of the couple's personal belongings and their automobiles were missing. Mr. Rosenbluth had been shot twice, one shot entering his left eye and the other entering the right side of his nose. Mrs. Rosenbluth had been shot four times from close range and had sustained wounds in the head and neck. There was no evidence of a struggle or of forced entry.

A wealth of evidence pointed to Sheppard's involvement in the murders. Sheppard was arrested while attempting to set fire to Mr. Rosenbluth's automobile in the early morning hours of December 3, 1993; Andre Graham was arrested for transporting Sheppard to that location. At the time of Sheppard's arrest, he was in possession of Mrs. Rosenbluth's watch and several of Mr. Rosenbluth's credit cards, and a search of Sheppard's residence disclosed other items belonging to the Rosenbluths. Sheppard's fingerprint was found in the Rosenbluths' home. Mr. Rosenbluth's wounds and two of Mrs. Rosenbluth's wounds were inflicted by a .38 caliber handgun that was linked to Sheppard. Mrs. Rosenbluth's remaining wounds were inflicted by a .45 caliber automatic weapon belonging to Graham and discovered at Graham's girlfriend's home. The day before their arrest, Sheppard and Graham took the Rosenbluths' automobiles to body shops to obtain estimates for having the vehicles painted. And, Mrs. Rosenbluth's automobile was recovered near the home of Graham's girlfriend.

The evidence presented at trial indicated that Sheppard and Graham were close friends and together engaged in selling cocaine. Autopsies revealed that the Rosenbluths had ingested alcohol and cocaine within hours of their deaths. Drug paraphernalia and trace amounts of cocaine were present in the Rosenbluths' home when their bodies were discovered. The victims' financial records indicated that

3

they had been making significant withdrawals of cash and credit card charges--totaling hundreds of dollars per day--in the months prior to their death. During that same period, Mr. Rosenbluth had provided hotel rooms for Graham in exchange for cocaine. The Commonwealth theorized that Sheppard and Graham supplied the Rosenbluths with cocaine and murdered the couple when their finances began to dwindle either because the Rosenbluths failed to satisfy a drug debt or because Sheppard and Graham feared the couple would identify them as their suppliers. The Commonwealth contended that Sheppard shot Mr. Rosenbluth in the head twice while Graham shot Mrs. Rosenbluth twice, then Sheppard shot Mrs. Rosenbluth two additional times, inflicting the fatal wounds.

Sheppard was convicted of two counts of capital murder.**3** During sentencing, in addition to other evidence, the Commonwealth introduced evidence of prior unadjudicated criminal conduct by Sheppard. The jury imposed two death sentences--one for each of the Rosenbluths--finding that Sheppard represented a continuing serious threat to society and that both of the murders were"vile" in that they involved "aggravated battery" or "depravity of mind." Va. Code Ann. § 19.2-264.4(C) (Michie 1995). The Supreme Court of Virginia affirmed Sheppard's convictions and death sentences. See Sheppard v. Commonwealth, 464 S.E.2d 131, 141 (Va. 1995). The United States Supreme Court denied Sheppard's petition for a writ of certiorari on March 25, 1996. See Sheppard v. Virginia, 517 U.S. 1110 (1996). Sheppard then sought and was denied postconviction relief from the Supreme Court of Virginia.

Sheppard subsequently filed this petition for a writ of habeas corpus on May 1, 1997. The district court dismissed the petition and denied Sheppard's timely motion to alter or amend the judgment. See Fed. R. Civ. P. 59. On June 1, 1998, the district court granted Sheppard's application for a certificate of appealability.

_____

**3** Sheppard was also convicted of two counts of robbery and four counts of using a firearm in the commission of those offenses. On the four firearm convictions, the jury fixed Sheppards punishment at three years imprisonment for the first, and five years for each of the other three. Sheppard was sentenced to 20 years on each of the robbery counts.

4

II.

Absent cause and prejudice or a miscarriage of justice, a federal habeas court may not review constitutional claims when a state court declined to consider their merits on the basis of an adequate and independent state procedural rule. See Harris v. Reed, 489 U.S. 255, 262 (1989). Such a rule is adequate if it is regularly or consistently applied by the state court, see Johnson v. Mississippi , 486 U.S. 578, 587 (1988), and is independent if it does not "depend[ ] on a federal constitutional ruling," Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

A.

Sheppard contends that the method of appellate review employed by the Supreme Court of Virginia to review capital sentences is meaningless, resulting in the imposition of the death penalty in an arbitrary and capricious manner in violation of the Eighth Amendment. In support of this claim, Sheppard first contends that the refusal of the Supreme Court of Virginia to review his claims relating to the "future dangerousness" predicate on the basis of a mere"technicality"--that Sheppard had procedurally defaulted those claims--exemplifies the "callous indifference [of the Supreme Court of Virginia] to its constitutional and statutory duty to conduct meaningful appellate review of capital convictions." Opening Brief of Appellant at 31. In addition, Sheppard asserts that the proportionality review conducted by the Supreme Court of Virginia was inadequate.

Sheppard did not raise this claim on direct appeal. When Sheppard first raised it in his state petition for habeas corpus relief, the Supreme Court of Virginia held the claim to be procedurally defaulted under Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974) (holding that claims not properly raised on direct appeal will not be considered as a basis for collateral relief). This court has repeatedly held that the procedural rule set forth in Slayton is an adequate and independent state law ground for decision. See, e.g., Mu'Min v. Pruett, 125 F.3d 192, 196-97 (4th Cir.), cert. denied, 118 S. Ct. 438 (1997). And, Sheppard does not attempt to argue that cause and prejudice or a miscarriage of justice exist to excuse his procedural default. Consequently, we hold this claim to be procedurally defaulted.

5

B.

Sheppard also contends that the state prosecutor deprived him of due process of law by making improper closing arguments to the jury. The Supreme Court of Virginia refused to consider this claim on direct appeal, explaining that Sheppard had failed to properly preserve the issue for review by making a contemporaneous objection and seeking a mistrial. See Sheppard, 464 S.E.2d at 140-41. The Supreme Court of Virginia disposed of this claim in reviewing Sheppard's petition for state habeas corpus relief by citing to Slayton. Sheppard has not established cause and prejudice or a miscarriage of justice to excuse his procedural default; thus, we conclude that we are foreclosed from considering this issue.

C.

Finally, Sheppard contends that the state trial court deprived him of his constitutional rights under the Eighth and Fourteenth Amendments by permitting the Commonwealth to introduce various pieces of evidence at sentencing. First, Sheppard argues that the state trial court erred in admitting evidence concerning his participation in (1) a robbery and shooting at a local motel and (2) a robbery that involved a murder and a maiming. Sheppard also challenges the decision of the state trial court to permit the Commonwealth to call the victim of the maiming, who had suffered brain damage in the incident, to be viewed by the jury. Sheppard further asserts that the Commonwealth should not have been permitted to introduce the testimony of Maurice Turner, a fellow inmate, concerning Sheppard's admission to involvement in as many as ten additional murders in the Richmond, Virginia area. And, Sheppard maintains that the state trial court erred in allowing the testimony of Lonnie Athens, a criminologist who offered his opinion concerning Sheppard's future dangerousness.

On direct appeal, the Supreme Court of Virginia recognized that Sheppard had argued that the state trial court erred in admitting three of these four categories of evidence. The court, however, concluded that the evidence challenged in each of these claims was relevant to the future dangerousness predicate for imposition of the death penalty. And, because Sheppard had failed to assign error to the jury's finding of future dangerousness, the court concluded that these claims

6

had not been properly preserved for review. See Sheppard, 464 S.E.2d at 138-41. In support of this ruling, the Supreme Court of Virginia cited the Rules of the Supreme Court of Virginia 5:22(b), requiring counsel for the appellant to file "assignments of error upon which he intends to rely for ... review of the sentence of death," and 5:17(c), directing that the petition for appeal "list the specific errors in the rulings below upon which the appellant intends to rely" and explaining that "[o]nly errors assigned in the petition for appeal will be noticed by" the court. Id. at 139.

Sheppard argues that this finding of procedural default by the Supreme Court of Virginia is not adequate to foreclose federal habeas corpus review because it has not been "consistently or regularly applied." Johnson v. Mississippi, 486 U.S. 578, 587 (1988). Consistent or regular application of a state rule of procedural default does not require that the state court show an "undeviating adherence to such rule admitting of no exception," Wise v. Williams, 982 F.2d 142, 143 (4th Cir. 1992) (internal quotation marks omitted), when the state procedural rule has, as "a general rule, ... been applied in the vast majority of cases," Plath v. Moore, 130 F.3d 595, 602 (4th Cir. 1997) (internal quotation marks omitted), cert. denied , 118 S. Ct. 1854 (1998). But, "[i]n any given case, ... the sufficiency of such a rule to limit all review of a constitutional claim itself depends upon the timely exercise of the local power to set procedure." Ford v. Georgia, 498 U.S. 411, 423 (1991). State procedural requirements that are newly adopted after the fact are inadequate to foreclose federal habeas review if the defendant "could not be `deemed to have been apprised of its existence'" at the relevant time. Id. (quoting NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 457-58 (1958)); see Meadows v. Legursky, 904 F.2d 903, 907 & n.3 (4th Cir. 1990) (en banc) (explaining that decisions applying a state rule after that time are irrelevant in determining whether the rule was consistently applied at the critical time).

Here, Sheppard facially complied with Rules 5:17(c) and 5:22(b) by raising an assignment of error directed at each of the types of evidence that he now argues were unconstitutionally admitted. Of course, the Supreme Court of Virginia properly may interpret its rules to require an overarching assignment of error directed to the future dangerousness aggravator. But, because it had not done so prior to the

7

time defense counsel for Sheppard filed assignments of error on his behalf, it appears that a persuasive argument can be made that Sheppard cannot be deemed to have been apprised of the requirement in time to bring his actions into compliance with it. We need not address this issue here, though, because we conclude that the four issues either are procedurally defaulted for other reasons or lack merit.

i.

Sheppard argues that the state trial court erred in admitting evidence concerning his participation in two instances of criminal conduct for which he had not been convicted: (1) a robbery and shooting at a local motel; and (2) a robbery that involved a murder and a maiming. We cannot conclude, however, that at the time Sheppard's convictions and sentences became final, all reasonable jurists would have agreed that the admission of the evidence to which he points violated due process. See O'Dell v. Netherland, 117 S. Ct. 1969, 1973 (1997) (holding that "[b]efore a state prisoner may upset his state conviction or sentence on federal collateral review, he must" convince the federal habeas court that "a state court considering[the defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution" (internal quotation marks omitted; second & third alterations in original); see also Gray v. Thompson, 58 F.3d 59, 63-64 (4th Cir. 1995) (holding that the "new rule" doctrine of Teague v. Lane, 489 U.S. 288 (1989), dictated that a habeas petitioner had not established entitlement to the writ based on a claim that the prosecution violated his right to due process by failing to provide him with adequate notice of its intent to introduce evidence during capital sentencing of his unadjudicated criminal offenses), aff'd in part, vacated and remanded in part, 518 U.S. 152 (1996); cf. Green v. French, 143 F.3d 865, 874 (4th Cir. 1998) (explaining that the anti-retroactivity principles of Teague are applicable in contexts where the limitations of section 2254(d)(1) are not, such as when a claim is not "adjudicated on the merits in state court" because it was not properly raised, but a federal court determines that failure to raise the claim is excused). Thus, this argument by Sheppard does not provide a basis for federal habeas relief.

ii.

Sheppard also challenges the decision of the state trial court to permit the Commonwealth to call the victim of the maiming, who had suffered brain damage as a result of the assault, to be viewed by the jury. Sheppard did not raise this claim on direct appeal, and the state habeas court relied on the procedural rule set forth in Slayton in denying relief on this claim. And, since Sheppard has not demonstrated cause and prejudice or a fundamental miscarriage of justice to excuse his default, federal habeas consideration of this issue is barred.

iii.

Sheppard further asserts that the Commonwealth should not have been permitted to introduce the testimony of Maurice Turner, a fellow inmate, concerning Sheppard's admission to involvement in as many as ten additional murders in the Richmond, Virginia area. Also, Sheppard maintains that the state trial court erred in allowing the testimony of Lonnie Athens, a criminologist who offered his opinion concerning Sheppard's future dangerousness. Although Sheppard alleged error in both of these rulings at trial and on direct appeal, Sheppard's arguments were not couched in terms of violations of federal law or the United States Constitution. See Duncan v. Henry , 513 U.S. 364, 366 (1995) (per curiam) (holding that argument to state supreme court that an evidentiary ruling by trial court violated state law was insufficient to exhaust claim that the ruling constituted a violation of a federal constitutional right, and rejecting the argument that similarity of claims is adequate to exhaust); Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir.) (explaining that in order for federal claim to be exhausted, its substance must be presented to the highest state court), cert. denied, 118 S. Ct. 102 (1997); Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994) (noting that exhaustion requires that petitioner do more than apprise state court of the facts; he must"explain how those alleged events establish a violation of his constitutional rights"); id. at 995 (explaining that exhaustion requires "more than scatter[ing] some makeshift needles in the haystack of the state court record" (internal quotation marks omitted)). Because presentation of these claims to the state court at this juncture would be fruitless, they properly are considered to be procedurally barred. See George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996) ("A claim that has not

9

been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture."), cert. denied, 117 S. Ct. 854 (1997). And, because Sheppard does not maintain that his default may be excused by cause and prejudice or a miscarriage of justice, we hold these allegations of constitutional error to be procedurally defaulted.

III.

Sheppard contends that the state trial court deprived him of his constitutional right to present evidence in mitigation of sentence by preventing him from informing the jury that Graham received a life sentence for his participation in the Rosenbluths' murders. "`[T]he Eighth and Fourteenth Amendments require that the sentencer ... not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'" Eddings v. Oklahoma, 455 U.S. 104, 110 (1982) (second alteration in original) (quoting Lockett v. Ohio , 438 U.S. 586, 604 (1978) (plurality opinion)). Evidence of the sentence received by a codefendant, however, is neither an aspect of the defendant's character or record nor a circumstance of the offense. See Brogdon v. Blackburn, 790 F.2d 1164, 1169 (5th Cir. 1986). Moreover, such evidence does not "tend[ ] logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value." McKoy v. North Carolina , 494 U.S. 433, 440 (1990) (internal quotation marks omitted). Sheppard has pointed to no Supreme Court precedent that all reasonable jurists would conclude dictates a decision that a codefendant's sentence is mitigating evidence. See Green, 143 F.3d at 870 (explaining that in determining whether federal law was clearly established, we must look to Supreme Court decisions). Accordingly, the rejection of this claim by the Supreme Court of Virginia did not constitute an unreasonable application of clearly established federal law. See 28 U.S.C.A. § 2254(d)(1).

IV.

Sheppard next asserts that the "vileness" predicate for the death penalty is unconstitutionally vague. We need not address Sheppard's

10

claim that the "vileness" predicate is constitutionally deficient because the future dangerousness predicate adequately supports the verdict. See George, 100 F.3d at 362-63. Even if the "vileness" predicate failed to constitutionally channel the discretion of the jury in imposing the death sentence, there is no question but that the finding that Sheppard was guilty of capital murder, coupled with the finding of the future dangerousness predicate, did so. And, the invalidity of the "vileness" predicate would not result in the introduction of evidence not otherwise properly before the jury or the exclusion of evidence that was. See id. at 363; see also Zant v. Stephens, 462 U.S. 862, 885-89 (1983); accord Tuggle v. Netherland , 516 U.S. 10, 12-13 (1995) (per curiam). Thus, any error in the "vileness" aggravator does not provide a basis for granting the writ of habeas corpus because Sheppard's sentences still rest on firm ground.

V.

Sheppard also challenges the sufficiency of the evidence to support his convictions of capital murder, asserting in accordance with his trial testimony that he was not the triggerman in the murders and thus, under Virginia law, cannot be sentenced to death. The Supreme Court of Virginia rejected this claim on direct appeal, concluding that the jury reasonably could have determined that Sheppard's testimony was untruthful and that Sheppard's guilt had been established beyond a reasonable doubt. See Sheppard, 464 S.E.2d at 136-38. Specifically, the court noted (1) that Sheppard had admitted his presence in the house at the time of the Rosenbluths' murders--but suggested that Benji Vaughan, a mutual friend of his and Graham's, was the triggerman; (2) that the murder weapon was linked to Sheppard by a wealth of evidence, including Sheppard's admission that he had accidentally shot Vaughan with the same .38 caliber weapon six days prior to the murders; and (3) that Vaughan testified that he was not present when the Rosenbluths were murdered, did not know where the victims lived, and did not possess a .38 caliber weapon either before or after the murders. Under these circumstances, we cannot conclude that the decision of the Supreme Court of Virginia that the evidence was adequate to support the verdict was unreasonable. See 28 U.S.C.A. § 2254(d)(1); Green, 143 F.3d at 870; see also Glasser v. United States, 315 U.S. 60, 80 (1942) (holding that "[t]he verdict of a jury

11

must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it").

VI.

Sheppard next contends that various actions on the part of trial counsel deprived him of his Sixth Amendment right to effective assistance of counsel. He asserts that counsel acted outside the realm of competent counsel (1) in failing to seek a mistrial or a cautionary instruction in response to comments of the prosecutor in closing argument; (2) in failing to impeach the testimony of Jerry Chappell with his inconsistent testimony from the Andre Graham trial; and (3) in referring to Sheppard as a "predator" and as "not a good person" during closing arguments. And, Sheppard maintains that the cumulative effect of these errors was prejudicial to him.

Sheppard has not presented his arguments that counsel was ineffective for failing to impeach the testimony of Jerry Chappell and for referring to Sheppard as a predator and not a good person to the Supreme Court of Virginia. As such, these claims are procedurally defaulted since they would be procedurally barred under state law if Sheppard attempted to raise them at this juncture. See George, 100 F.3d at 363.

The Supreme Court of Virginia held that Sheppard's undefaulted claim of ineffective assistance of counsel--that counsel should have sought a mistrial in response to the prosecutor's comments during closing argument--lacked merit. We cannot conclude that in the absence of this alleged unprofessional error by Sheppard's attorneys there is a reasonable probability--i.e., one adequate to undermine our confidence in the result--that "the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). Thus, we hold that the resolution of Sheppard's sole undefaulted claim of ineffective assistance of counsel by the Supreme Court of Virginia was not an unreasonable application of clearly established federal law as determined by the Supreme Court. See 28 U.S.C.A. § 2254(d)(1).

12

VII.

For the reasons set forth above, we conclude that the district court properly dismissed Sheppard's petition for habeas corpus relief. Accordingly, we affirm.

AFFIRMED

13