# Richmond

## PAUL PRESTON BRANCH, III

### V.

## COMMONWEALTH OF VIRGINIA

March 11, 1983.

Record No. 820331.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson,*
Stephenson and Russell, JJ.

---

\* Justice Thompson participated in the hearing and decision of this case prior to the effective date of his retirement on March 2, 1983.

*Ross Rosenberg [FL] (Charles V. Bashara; Bashara & Hubbard,* on brief), for appellant.

*Jacqueline G. Epps, Senior Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

POFF, J., delivered the opinion of the Court.

Paul Preston Branch, III, was convicted of second degree murder, robbery, and use of a firearm in the commission of a felony and sentenced in accordance with the jury's verdicts to confinement in the penitentiary for twenty years, five years, and one year, respectively. The principal question in this appeal is whether the evidence was sufficient to support the robbery conviction.

The offenses occurred on June 3, 1981, at Branch's home in Norfolk. The victim, Jeffery Ryder, left Florida the previous day to drive to Virginia. Passengers in Ryder's automobile were Dennis Kenney, Leif Dereng, and Antonio Hale. Around mid-afternoon on June 3, the men arrived at Branch's house. Branch invited everyone inside, but he first asked Kenney, who was obviously intoxicated, if he had a gun. Branch knew that Kenney, a longtime acquaintance, customarily carried a gun and would get "a little drunk sometimes and you are liable to get your house shot up". Kenney relinquished a pistol he had brought from Florida, and Branch placed it under the cushion of the couch where he was sitting.

The group "sat there a couple hours", talking, drinking beer, and smoking marijuana. After a time, Ryder asked for the gas money Kenney had supposedly promised to give him in exchange for the ride from Florida. Kenney denied the promise and refused to pay. Branch intervened, offering Ryder $20 in an effort to appease him, but Ryder spurned the money, complaining it was not enough. Branch told Ryder he was "lucky to be getting the twenty" and "ought to just leave". As Ryder continued to protest, Branch arose from the couch and picked up the gun. According to Dereng, "he pointed it at [Ryder] and it was cocked." The gun discharged, and the bullet struck Ryder in the face. Branch told the others that "it was an accident", a stance he maintained throughout police interrogation and at trial.

Ryder, who died almost instantly, was dragged into the bedroom and wrapped in a blanket. "[H]is pockets were gone through", and a wallet, containing identification cards but no money, was removed from his clothing. Dereng testified, "I think [Branch] went through his pockets"; Hale testified that Branch directed someone to "get [Ryder's] stuff out of the car". Neither witness was present in the bedroom when the body was searched, but both saw Branch burn the contents of Ryder's wallet in an ashtray, an act he admitted at trial. Dereng was sent to the store to buy beer during the argument over gas money, and measured

by his absence, at least 15-20 minutes elapsed between the shooting and the burning of Ryder's papers. Branch instructed Dereng and Hale to put the body into Ryder's car. Branch and Dereng then drove to another location in Norfolk and "dumped" the corpse near a city street where police discovered it later that night.

Branch was arrested three days later. The robbery indictment charged that he "did rob one Jeffery Ryder of United States currency, having a value of about $20.00." At the close of the Commonwealth's evidence and over objection by defense counsel, the indictment was amended by substituting "wallet" for "United States currency" in order, as the Commonwealth said, "to conform to the evidence . . . presented."

Branch argues on appeal, as he did below, that the evidence "was insufficient . . . to establish specific intent to steal the wallet contemporaneous with the shooting".[1] He reasons that "[t]he clear motive of removing the wallet and identification cards was to thwart police efforts in identification of the corpse" — an intention not formulated until well after all violence against the victim had been consummated and Ryder was dead. The Attorney General counters that the precise sequence of events or lapse of time between them is unimportant, so long as "all of the elements necessary to show robbery . . . are present."

Branch was indicted and convicted under Code § 18.2-58, a statute which merely prescribes the punishment for robbery and looks to the common law for definition of the offense. Robbery is "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." *Jones* v. *Commonwealth*, 172 Va. 615, 618, 1 S.E.2d 300, 301 (1939).

The principal elements of robbery, a crime against the person of the victim, are the taking, the intent to steal, and the violence (or intimidation). Definitionally, there is a temporal correlation among these elements. The violence must occur before or at the time of the taking. The intent to steal and the taking must

---

[1] Branch also attacks his robbery conviction on the ground the evidence fails to establish that he was the criminal agent in the "unlawful taking". Branch's argument has no merit. "Generally, all who are present at the commission of a robbery, rendering it countenance and encouragement . . . are liable as principal actors. . . .[T]he accused need not have taken any[thing] from the victim with his own hands. . . ." 67 Am. Jur. 2d Robbery § 8 (1973).

coexist. And the offense is not robbery unless the *animus furandi* was conceived before or at the time the violence was committed.

We recognized the correlation factor in *Jones*. There, the defendant "snatched" a pistol from the hand of a police officer who was scuffling with Jones's half-brother. Instantly, Jones fled and threw the weapon away. The evidence indicated that Jones acted only in "an effort to assist or protect a relative in trouble." *Id*. at 620, 1 S.E.2d at 302. Concluding that "we must look to the intention as it existed at the time of the taking rather than to its formation subsequently", *id*. at 621, 1 S.E.2d at 302, and finding no intent to steal at the time the forcible taking occurred, we reversed Jones's robbery conviction.

We applied the correlation factor in two recent homicide-robbery cases. "[T]he violence or intimidation must precede or be concomitant with the taking," *Whitley* v. *Commonwealth*, 223 Va. 66, 73, 286 S.E.2d 162, 166 (1982), and "the evidence was fully sufficient to support the conclusion that Whitley murdered Mrs. Parsons *with intent to rob* her", *id*. at 74, 286 S.E.2d at 167 (emphasis added). In *Wm. Patterson* v. *Commonwealth*, 222 Va. 653, 664, 283 S.E.2d 212, 219 (1981), the evidence was "overwhelming to support the inference that defendant killed his grandmother in an effort to obtain money or items of value from her."

Here, as in *Whitley* and *Wm. Patterson*, the question is whether robbery was the motive for the killing. Branch's conduct, both before and after the killing, negates any inference that he had conceived an intent to rob at the time he shot his victim.[2] Up to that point, Branch had actually offered Ryder money in an effort to resolve an argument and "to get [Ryder] out of my house." The effort failed, the argument continued, and the killing occurred. Branch's conduct thereafter shows that he was motivated by no other purpose than to cover up the crime he had committed. He personally supervised and participated in the group's efforts to find and destroy Ryder's identification documents and to dispose of his body.

The record shows that the violent killing and the unlawful taking were two separate acts, performed for entirely different reasons. Because it is clear that Branch possessed no intent to steal at

---

[2] The Attorney General conceded in oral argument that Branch had "no intent to steal" when he shot Ryder; "the shooting was for other reasons."

the moment the shooting occurred, we hold that the evidence was insufficient as a matter of law to support his conviction of robbery.

■ Branch raises only one question concerning his convictions of murder and the use of a firearm. He argues on brief that he was prejudiced by the trial court's admission into evidence of testimony that " 'he had been in jail in Florida for murder' on a prior unrelated charge". He asserts that this evidence should have been excluded as violative of the general prohibition against proof of "other crimes" for the purpose of showing the accused's propensity to commit the particular offense charged. At trial, however, defense counsel challenged the evidence, and the judge ruled upon it, on grounds of "hearsay" and "leading" questions posed by the Commonwealth. Counsel conceded at bar that the objection raised on appeal was not raised at trial, and we will not consider this assignment of error. Rule 5:21.

> A party will not be allowed to specify one or more grounds of objection to evidence offered in the trial court and rely upon other grounds in the appellate court. He is regarded as having waived all other objections to the evidence except those which he pointed out specifically.

*Jackson* v. *C. & O. Ry. Co.*, 179 Va. 642, 650-51, 20 S.E.2d 489, 492 (1942).

We will affirm the convictions of murder and use of a firearm. As to the robbery conviction, we will reverse the judgment and dismiss the indictment.

*Affirmed in part,*
*reversed in part,*
*and dismissed.*