COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Felton, Judges Kelsey and Huff
Argued at Chesapeake, Virginia


STEVEN PAUL CARLSTROM

                                                    MEMORANDUM OPINION* BY
v.       Record No. 0184-11-1                       JUDGE GLEN A. HUFF
                                                    NOVEMBER 8, 2011
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Aundria D. Foster, Judge

Stephanie S. Miller, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Jennifer C. Williamson, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Steven Paul Carlstrom ("appellant") was convicted of malicious wounding, in violation

of Code § 18.2-51, and robbery, in violation of Code § 18.2-58.  Following a bench trial in the

Circuit Court of the City of Newport News ("trial court"), appellant was sentenced to twenty

years' incarceration for malicious wounding, with fifteen years suspended, and ten years'

incarceration for robbery, with nine years suspended.

Appellant only challenges the robbery conviction.  On appeal, appellant contends that the

trial court erred in convicting him of robbery because there was insufficient evidence to prove he

had the intent to steal at the time the violence occurred.  For the following reasons, we affirm.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I. BACKGROUND[1]

On February 23, 2009, appellant and Darryl Drummond ("Drummond") gathered at the apartment of the victim, Edward Lee Barnes ("Barnes"), to socialize. Sometime between 7:30 p.m. and 8:00 p.m., the three individuals began drinking alcohol and listening to music. At some point, Barnes directed a racial slur at Drummond regarding his taste in music, prompting appellant to retaliate by striking Barnes.

Appellant and Drummond then began kicking and punching Barnes, causing him to sustain injuries to the head, stomach, and back. Barnes testified that, "begging and pleading for [his] life," he emptied his pockets and threw approximately two hundred dollars in cash, his cellular telephone, and the keys to his apartment and vehicle on the floor. Barnes told the two men that "[i]f this is . . . what you want, then take it." Appellant responded, "[d]amn right I'm going to take it. I'm going to take it all," and retrieved the items from the floor. The men resumed beating Barnes, who drifted in and out of consciousness throughout the assault. At some point, Barnes overheard appellant say "he had already gone too far" and "[h]e might as well go the rest of the way." Also during the assault, Barnes saw the two men searching his apartment, presumably looking for items of value.

When Barnes regained consciousness following the assault, appellant and Drummond had left the apartment, and the property that Barnes had thrown on the floor was no longer there. As of the date of trial, the property, including Barnes's truck, had not been returned to Barnes. Barnes testified that he had thrown the property on the floor only because "I didn't want to be

---

[1] As the parties are fully conversant with the record in this case, and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of this appeal.

pummeled anymore." On January 8, 2010, appellant was convicted of robbery and malicious wounding.

This appeal followed.

## II. STANDARD OF REVIEW

When considering the sufficiency of the evidence on appeal, "we determine whether the evidence, viewed in the light most favorable to the prevailing party, the Commonwealth, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense." Haskins v. Commonwealth, 31 Va. App. 145, 149-50, 521 S.E.2d 777, 779 (1999). On review, this Court does not substitute its own judgment for that of the trier of fact. See Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992). Instead, "'we presume the judgment of the trial court to be correct,' and 'will not set it aside unless it is plainly wrong or without evidence to support it.'" Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002) (quoting Broom v. Broom, 15 Va. App. 497, 504, 425 S.E.2d 90, 94 (1992); Dodge v. Dodge, 2 Va. App. 238, 242, 343 S.E.2d 363, 365 (1986)); see Code § 8.01-680.

## III. ANALYSIS

On appeal, appellant argues that the evidence was insufficient to prove that he harbored an intent to steal at the time of initiating the violence against Barnes. Specifically, he contends that he lacked the intent to steal and that Barnes did not give up his property as a result of appellant's violent attack.

Virginia defines robbery under the common law and prescribes punishment under Code § 18.2-58.[2] See Branch v. Commonwealth, 225 Va. 91, 94, 300 S.E.2d 758, 759 (1983).

---

[2]     If any person commit robbery by partial strangulation, or suffocation, or by striking or beating, or by other violence to the person, or by assault or otherwise putting a person in fear of

- 3 -

> The essential elements of common law robbery are "(1) a felonious taking, (2) accompanied by an asportation of (3) personal property of value (4) from the person of another or in his presence, (5) against his will, (6) by violence or by putting him in fear, (7) *animo furandi* (with the intent to steal)."

Chappelle v. Commonwealth, 28 Va. App. 272, 274-75, 504 S.E.2d 378, 379 (1998) (quoting 67 Am. Jur. 2d Robbery § 12 (1998)).

The intent to steal "is an intent to feloniously deprive the owner permanently of his property." Pierce v. Commonwealth, 205 Va. 528, 533, 138 S.E.2d 28, 31 (1964). "[T]he *animus furandi* is provided by inference from the asportation and conversion of the property, in the absence of satisfactory countervailing evidence introduced by the defendant." Clay v. Commonwealth, 30 Va. App. 254, 261, 516 S.E.2d 684, 687 (1999). Moreover, "'[i]ntent is the purpose formed in a person's mind at the time an act is committed.'" Carter v. Commonwealth, 280 Va. 100, 105, 694 S.E.2d 590, 594 (2010) (quoting Commonwealth v. Taylor, 256 Va. 514, 519, 506 S.E.2d 312, 314 (1998)). Intent "'may occur momentarily,'" and "'does not have to exist for any particular length of time.'" Commonwealth v. Jones, 267 Va. 284, 289, 591 S.E.2d 68, 71 (2004) (quoting Durham v. Commonwealth, 214 Va. 166, 169, 198 S.E.2d 603, 606 (1973)). "'Intent may, and often must, be inferred from the facts and circumstances of the case, including the actions of the accused and any statements made by him.'" Carter, 280 Va. at 105, 694 S.E.2d at 594 (quoting Stanley v. Webber, 260 Va. 90, 96, 531 S.E.2d 311, 315 (2000)).

Moreover, "for theft by violence or intimidation to constitute robbery, the intent to steal must exist at the time of the violence or intimidation." Shepperson v. Commonwealth, 19

---

> serious bodily harm, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony and shall be punished by confinement in a state correctional facility for life or any term not less than five years.

Code § 18.2-58.

Va. App. 586, 592, 454 S.E.2d 5, 9 (1995) (citing Branch, 225 Va. at 95-96, 300 S.E.2d at 759-60). "Definitionally, there is a temporal correlation among these elements. The violence must occur before or at the time of the taking." Branch, 225 Va. at 94, 300 S.E.2d at 759. "[W]here the violence against the victim and the trespass to his property combine in a continuing, unbroken sequence of events, the robbery itself continues as well for the same period of time." Briley v. Commonwealth, 221 Va. 532, 543, 273 S.E.2d 48, 55 (1980).

Appellant first contends that the trial court erred in convicting him of robbery because he lacked the intent to steal. Specifically, appellant argues that he lacked the intent to steal because he initiated his assault as retaliation for a racial epithet and not for the purpose of obtaining Barnes's property.

In this case, appellant's statements and actions surpassed mere retaliation for a racial epithet. On brief, appellant maintains that "the assault was not *initiated* with the purpose of robbing Mr. Barnes." (Emphasis added). However, appellant did not stop with the initial assault. He continued to assault Barnes to the point that Barnes offered his property to appellant. Appellant then took the items, stating, "[d]amn right I'm going to take it. I'm going to take it all." In short, appellant's statements and actions indicated an intent not only to retaliate, but also to permanently deprive Barnes of his property through the ongoing use of violence.

Moreover, appellant's subsequent asportation of Barnes's property is wholly sufficient to demonstrate appellant's intent to steal. After throwing his property on the floor, Barnes watched appellant retrieve the items. When Barnes regained consciousness following the altercation, the items were no longer in his apartment. Barnes's truck, the key to which appellant had taken, was also missing. At the time of trial, the truck had not yet been located. Even if appellant's statements and actions toward Barnes on this occasion had not sufficiently intimated his intent to steal, his actual asportation of the property certainly did.

Appellant's reliance on the Supreme Court of Virginia's decision in McMorris v. Commonwealth, 276 Va. 500, 508, 666 S.E.2d 348, 352 (2008) ("Robbery is not an incidental, probable consequence of an assault . . . ."), and our decision in Abdullah v. Commonwealth, 53 Va. App. 750, 675 S.E.2d 215 (2009), is misplaced. In both McMorris and Abdullah, the defendant was oblivious to the theft by a co-assailant. Here, appellant was cognizant of, and actively participated in, the taking of Barnes's property.

In turning to appellant's assertion that his retaliatory assault on Barnes was separate from Barnes's relinquishment of his property, appellant suggests that Barnes gave up his property free of demand or coercion.

Here, appellant's violence against Barnes was sufficiently contemporaneous with the taking of Barnes's property to constitute robbery. Appellant's assault of Barnes spanned a period of time, during which the taking of Barnes's property occurred. During the assault, Barnes emptied his pockets of money, keys, and a cellular telephone. Appellant then took the property and immediately struck Barnes again, rendering him unconscious. Thus, Barnes did not relinquish his property due to any separate and unrelated circumstance, but rather from fear perpetuated by appellant's ongoing violence.

In addition, appellant mistakenly supposes that robbery requires that an intent to steal must be formulated at the outset of a course of violence. However, "'[o]ne may commit robbery by striking his victim with fist or weapon and then, having thus rendered the victim dead or unconscious or dazed or unwilling to risk another blow, taking his property away from him.'" Anderson v. Commonwealth, 48 Va. App. 704, 718, 634 S.E.2d 372, 379 (2006) (quoting 3 Wayne R. LaFave, Substantive Criminal Law § 20.3(d), at 184 (2d ed. 2003)). The trial record reflected the following:

> [Commonwealth]: What did you think would happen if you didn't
> give up those items in your pocket; the money and the keys?

[Barnes]: They were going to kill me.

[Commonwealth]: And just to be clear, why did you think that?

[Barnes]: Look what they've already done to me.

Clearly, Barnes believed that appellant wanted his property and that appellant would in fact kill Barnes if he did not comply. Barnes's relinquishment of the property stemmed not from donative intent or intent to abandon the property, but solely from a desire to prevent further assault. As such, Barnes did not voluntarily relinquish his property.

Appellant also seeks to distinguish the present case from our decision in Anderson, 48 Va. App. 704, 634 S.E.2d 372. There, the defendant was found guilty of robbery where he first forcibly raped his victim, and subsequently asked her for money. Id. at 718, 634 S.E.2d at 379. We found in that case that the tenor of violence characterizing the defendant's encounter with the victim ultimately led the victim to relinquish her purse. Id. (noting that "[u]nder [the defendant's] theory, a thief who threatens to shoot a victim before taking her money commits robbery. But a thief who first shoots the victim and then asks for her money does not . . . .").

Likewise, in this case appellant took Barnes's property after committing a brutal assault on him. During the encounter, Barnes saw the two men searching his apartment, presumably looking for items of value. By throwing his property onto the floor, Barnes sought to appease his attackers and end their assault. Finding our reasoning in Anderson applicable to the present case, we conclude that the evidence is sufficient to prove the violence was contemporaneous with the asportation of the property.

For the foregoing reasons, we hold that the evidence was sufficient to prove that appellant had the intent to steal at the time the violence occurred. Accordingly, we affirm the judgment of the trial court.

Affirmed.