COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Beales and Alston
Argued at Richmond, Virginia


JHAVAR YOMONT SMITH

MEMORANDUM OPINION* BY
v.      Record No. 1709-16-2          JUDGE ROSSIE D. ALSTON, JR.
                                       DECEMBER 5, 2017
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE GEORGE COUNTY
W. Allan Sharrett, Judge

J. Brian Bailey (Joan J. Burroughs; The Law Office of Joan J.
Burroughs, PLC, on brief), for appellant.

Benjamin H. Katz, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Jhavar Smith ("appellant") appeals the decision of the Circuit Court of Prince George

County ("trial court"), which denied his motion to suppress evidence.  Appellant argues that the

trial court erred in finding that the investigating officer had reasonable, articulable suspicion to

question him and that the officer seized evidence in violation of the Fourth Amendment to the

United States Constitution.  We are unpersuaded and affirm the trial court's decision.

BACKGROUND

On May 17, 2014, Officer Randy Dalton ("Dalton") of the Prince George County Police

was on patrol and observed a silver sedan with several objects dangling from the rearview

mirror.  Dalton initiated a traffic stop and identified appellant as the driver.  Appellant told

Dalton that his license was suspended.  Dalton also noticed that appellant was sweating despite

the cool temperature outside, that he had a "white, powdery substance" on his nose, and that his

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

nose was running. Appellant denied having an illness that could explain these factors. Dalton had appellant step out of his vehicle and observed bulges in appellant's front pocket. Dalton directed appellant to stand near the rear of the vehicle, while Dalton positioned himself approximately six to eight feet away. Dalton asked appellant whether he had anything in his pockets, and if so, to place any items on the trunk of the vehicle. Appellant removed nearly $300 in cash from his right front pocket and cigarettes and a lighter from his left front pocket. Dalton then asked appellant to lift up his shirt so he could observe appellant's waistband. Appellant complied with these requests.

Dalton noticed a bulge in appellant's "watch pocket"[1] and asked him to empty it. Appellant refused and denied having anything in the "watch pocket," but then, appellant put two fingers into the "watch pocket" and "started to dig down into [it]." Dalton drew his taser and held it at a "low ready position," and appellant then removed a standard "drinking straw" that had been cut down in length by approximately three inches. Appellant threw the straw on the ground.

At this point, Dalton raised and pointed his taser at appellant and ordered him to lie down on the ground. Dalton later testified that his training and experience led him to conclude that appellant's actions and the items in his pockets were consistent with narcotics possession. Appellant briefly struggled before being handcuffed and placed inside Dalton's squad car. A subsequent search of appellant incident to his arrest revealed two monetary bills each folded in an "apothecary fold."[2] Within each, Dalton found more of a "white, powdery substance." Lab testing confirmed that one bill contained cocaine and the other contained heroin.

---

[1] A "watch pocket" is "a small pocket just below the front waistband of men's trousers." Merriam-Webster's Collegiate Dictionary 1412 (11th ed. 2004).

[2] An apothecary fold involves a series of systematic folds commonly used to conceal and carry contraband.

Appellant argued a motion to suppress to the trial court, challenging Dalton's request for appellant to empty the "watch pocket" and the subsequent seizure of evidence, which the trial court denied. Following a bench trial, the trial court found appellant guilty of possession of cocaine and possession of heroin. This appeal followed.

ANALYSIS

I. Appellant Waived His Coercion Argument Pursuant to Rule 5A:18.

In his brief and at oral argument, appellant asserted that Dalton coerced him into revealing the straw in his "watch pocket." The Commonwealth contends that appellant waived appellate review of this argument. We agree with the Commonwealth.

Rule 5A:18 provides, in pertinent part, that to preserve an issue for appeal, "an objection [must be] stated with reasonable certainty at the time of the ruling." "The purpose of Rule 5A:18 is to 'enable the ruling court to take any necessary corrective action,' and to 'rule intelligently on the issues presented.'" Cox v. Commonwealth, 65 Va. App. 506, 515, 779 S.E.2d 199, 203 (2015) (citations omitted). "Applying Rule 5A:18, an 'appellate court, in fairness to the trial judge, should not . . . put a different twist on a question that is at odds with the question presented to the trial court.'" Johnson v. Commonwealth, 58 Va. App. 625, 637, 712 S.E.2d 751, 757 (2011) (quoting Commonwealth v. Shifflett, 257 Va. 34, 44, 510 S.E.2d 232, 237 (1999)). "[A] specific, contemporaneous objection gives the opposing party the opportunity to meet the objection at that stage of the proceeding." Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991)). If both the trial court and appellee have had this opportunity, then appellant has sufficiently preserved his objection for appeal. Cox, 65 Va. App. at 515, 779 S.E.2d at 203 (citation omitted). "A party will not be allowed to specify one or more grounds of objection to evidence offered in the trial court and rely upon other grounds in the appellate court. He is regarded as having waived all other objections to the evidence except those which he pointed out

- 3 -

specifically." Branch v. Commonwealth, 225 Va. 91, 96, 300 S.E.2d 758, 760 (1983) (quoting

Jackson v. C. & O. Ry. Co., 179 Va. 642, 650-51, 20 S.E.2d 489, 492 (1942)). The Supreme

Court has stated that this principle "exists 'to protect the trial court from appeals based upon

undisclosed grounds, to prevent the setting of traps on appeal, to enable the trial judge to rule

intelligently, and to avoid unnecessary reversals and mistrials.'" Brandon v. Cox, 284 Va. 251,

255, 736 S.E.2d 695, 696 (2012) (interpreting Rule 5:25, the equivalent of Rule 5A:18 in the

Supreme Court's rules) (citations omitted).

In the trial court, appellant argued that Dalton lacked reasonable, articulable suspicion

when he questioned appellant and asked him to empty his pockets following a traffic stop. On

appeal, however, appellant asserts that the combination of Dalton's questioning and the drawing

of his taser coerced appellant into removing the straw from his pocket. Appellant characterizes

Dalton's actions as "a show of force" that "unduly coerced" his movements. Appellant concedes

to this Court that he never presented this argument to the trial court, and the only reference to

coercion in his brief appears in a footnote, wherein appellant explicitly acknowledges that the

issue is "not before this [C]ourt."[3]

We find that appellant's argument to the trial court during the motion to suppress did not

afford the trial court an adequate opportunity to rule on the coercion issue. Although appellant

discussed the same facts during his motion to suppress as he does on appeal, this does not cure

the procedural defect and is analogous to the issue we confronted in Johnson v. Commonwealth.

See 58 Va. App. at 637, 712 S.E.2d at 757. In Johnson, we held that an appellate court does not

act appropriately when it considers a different legal argument than the trial court. Id. For this

---

[3] Although appellant's default under Rule 5A:18 is dispositive here, we also note that appellant defaulted under Rule 5A:12. Rule 5A:12 requires appellant to articulate his arguments within his assignments of error and provide citations to pages in the record for preservation purposes. Appellant did neither.

Court to consider appellant's coercion argument would require us to undermine the trial court's ruling because "the *same argument must have been raised*, *with specificity*, at trial before it can be considered on appeal." Id. (emphasis added) (quoting Correll v. Commonwealth, 42 Va. App. 311, 324, 591 S.E.2d 712, 719 (2004)).

Therefore, we decline to consider appellant's coercion argument. Additionally, appellant did not argue in his brief or at oral argument that the "ends of justice" exception should apply here, and we will not invoke it *sua sponte*.

II. The Trial Court Did Not Err in Denying Appellant's Motion to Suppress.

We now turn to the argument appellant has raised on appeal – whether the arresting officer had reasonable, articulable suspicion to question appellant and ask him to empty the "watch pocket." We find that the trial court did not err and affirm.

> In reviewing the denial of a motion to suppress evidence claiming a violation of a person's Fourth Amendment rights, we consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial. The burden is on [appellant] to show that the trial court committed reversible error. We are bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence. We will review the trial court's application of the law *de novo*.

Commonwealth v. Smith, 281 Va. 582, 588-89, 709 S.E.2d 139, 141 (2011) (quoting Jones v. Commonwealth, 279 Va. 665, 670, 691 S.E.2d 801, 803 (2010)). "'Ultimate questions of reasonable suspicion and probable cause to make a warrantless search' involve questions of both law and fact and are reviewed *de novo* on appeal." McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)). As such, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them," but analyze the trial court's determination as to "whether the Fourth Amendment was implicated by applying *de novo* our own legal

analysis of whether based on those facts a seizure occurred." Id. at 198, 487 S.E.2d at 261 (citations omitted).

The Fourth Amendment of the United States Constitution provides, in relevant part: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." In determining whether a Fourth Amendment violation occurred, the fact finder considers the totality of the circumstances and applies "an objective rather than a subjective standard." McCain v. Commonwealth, 275 Va. 546, 552, 659 S.E.2d 512, 515-16 (2008) (citations omitted).

The jurisprudence instructs that there are three types of traffic stops: (1) "consensual encounters [that] do not implicate the Fourth Amendment," (2) "brief investigatory stops, commonly referred to as Terry stops," and (3) "highly intrusive, full-scale arrests." McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (quoting United States v. Sokolow, 490 U.S. 1, 7 (1939)). "A seizure occurs when an individual is either physically restrained or has submitted to a show of authority." Id. at 199, 487 S.E.2d at 262 (citations omitted). Alternatively, an encounter when an officer "identifies himself and states that he is conducting a narcotics investigation, without more, is not a seizure within the meaning of the Fourth Amendment, but is, instead, a consensual encounter." Id.

"Under well-settled principles of law, police officers may stop a person for the purpose of investigating possible criminal behavior even though no probable cause exists for an arrest." McCain, 275 Va. at 552, 659 S.E.2d at 516 (citing Terry v. Ohio, 392 U.S. 1, 22 (1968)). "A stop is permissible so long as the officer has reasonable, articulable suspicion that criminal activity may be afoot. To establish reasonable suspicion, an officer must be able to articulate more than an unparticularized suspicion or 'hunch' that criminal activity is afoot." Id. (citing Illinois v. Wardlow, 528 U.S. 119, 123-24 (2000)).

Here, appellant does not dispute the legality of the initial traffic stop but rather contests whether Dalton had a reasonable, articulable suspicion that criminal activity was afoot when he asked appellant to empty his "watch pocket." "[R]easonable suspicion is 'considerably less than proof of wrongdoing by a preponderance of the evidence' and 'obviously less demanding than that for probable cause.'" Perry v. Commonwealth, 280 Va. 572, 581, 701 S.E.2d 431, 436 (2010) (quoting Sokolow, 490 U.S. at 7). During traffic stops, officers are permitted to take necessary steps to protect themselves. Maryland v. Wilson, 519 U.S. 408, 414-15 (1997). As such, "[a]n officer's authority to order an occupant from a vehicle during a traffic stop is justified by the potential risks associated with traffic investigation[s] that implicate safety concerns." McCain, 275 Va. at 553, 659 S.E.2d at 516 (citing Wilson, 519 U.S. at 413-14).

Based on the record, we find that Dalton did not merely have a reasonable, articulable suspicion that criminal activity was afoot – he had probable cause to believe so. "[P]robable cause exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." Jones v. Commonwealth, 279 Va. 52, 59, 688 S.E.2d 269, 273 (2010). During the course of the traffic stop, Dalton made multiple observations in support of a probable cause determination. First, appellant's license was suspended – upon learning this information, Dalton obtained the authority to detain appellant. See Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 923-24 (2000). Second, Dalton also noticed several other factors consistent with drug use. Despite the cool temperature outside, appellant was sweating, but he denied being ill. He had a white, powdery substance on his nose, and his nose was running. He also possessed a large quantity of cash, and then denied having anything in his "watch pocket" despite an obvious bulge. After Dalton asked appellant to empty the "watch pocket," appellant stuck two fingers into it and removed a cut-off

- 7 -

piece of straw that appellant tossed aside, an action Dalton construed as disposing of "evidence of contraband." Nothing in the record indicates that Dalton ordered appellant to empty his "watch pocket"; rather, it is clear that appellant removed the straw voluntarily.

By this point, Dalton had probable cause to believe that appellant likely possessed narcotics, and he arrested him.[4] The circumstances surrounding the encounter would warrant a person of reasonable caution to believe that appellant was engaged in criminal activity. Once Dalton arrested appellant, he was entitled to conduct a search incident to that arrest even though he had not yet acquired a search warrant. See Collins v. Commonwealth, 292 Va. 486, 497, 790 S.E.2d 611, 616 (2016).

Accordingly, we hold that the combination of factors observed by Dalton established probable cause to arrest appellant. Thus, appellant's contention that Dalton lacked a legal basis to effect a further search of the "watch pocket" is without merit, and Dalton acted within the scope of his authority throughout the encounter. The trial court properly relied on Dalton's credible testimony in denying appellant's motion to suppress. Because Dalton had probable cause to arrest appellant and was entitled to search him incident to the arrest, the evidence

---

[4] During his testimony, Dalton reiterated the exact series of events to the trial court:

> THE COURT: Officer, why did you tell him to get on the ground?
> WITNESS: After he threw the --
> THE COURT: That was after he threw the straw.
> WITNESS: Because at that point I was confident that that was evidence of contraband that he was trying to toss. And I wanted him on the ground, because at that point he was under arrest. He was not free to go.
> THE COURT: Okay.
> WITNESS: And to get him on the ground to secure him.
> THE COURT: I understand.
> WITNESS: To secure that --
> THE COURT: You told him to do that after you saw him throw out the straw?
> WITNESS: Absolutely, yes, sir.

subsequently recovered was constitutionally sound, and thus the judgment of the trial court is affirmed.

Affirmed.
