UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judge Huff,[*] Causey and White
Argued at Richmond, Virginia


KEVIN PATRICK MCLEER

v.     Record No. 1929-23-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[**] BY
JUDGE DORIS HENDERSON CAUSEY
MARCH 18, 2025


FROM THE CIRCUIT COURT OF ORANGE COUNTY
David B. Franzen, Judge

(Bryan Jones; Bryan J. Jones, LLC, on brief), for appellant.
Appellant submitting on brief.

Rachel A. Glines, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Kevin McLeer of possessing a firearm after

being convicted of a violent felony.[1]  On appeal, McLeer alleges that the court erred in overruling

his motion to exclude evidence obtained from a search of his cell phone following execution of a

search warrant authorizing the seizure of "cell phones" from his residence.  He also alleges that the

trial court erred in denying his motion to strike the evidence as insufficient to prove beyond a

reasonable doubt that he actually or constructively possessed a firearm during September or October

---

[*] Judge Huff participated in the hearing and decision of this case prior to the effective
date of his retirement on December 31, 2024.

[**] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The trial court also revoked McLeer's previously suspended time for two prior
convictions.  The court re-suspended all but one year for each prior conviction.  Those
revocations are not the subject of this appeal and, therefore, we do not address them.

2021.  Finding that the trial court's first ruling is not reviewable and the second ruling is not reversible, we affirm the conviction.

BACKGROUND

According to familiar principles of appellate review, we will state the facts "in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).  "In doing so, we [will] discard any of [McLeer's] conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020).

I.  McLeer's Possession of Firearms in September and October 2021

During September and October 2021, McLeer lived with his girlfriend, Kayla Hughes, at a friend's house on Mountain Track Road in Orange County, Virginia.  He and Hughes lived at the house with Ashleigh Lohr, Lohr's two young children, and his friend, William Clark.  Lohr's grandparents owned the home prior to their passing, and although he did not live there during September and October 2021, some of Lohr's father's belongings remained in the household.  In 2021, McLeer was a four-time convicted felon.  Lohr and Clark were convicted felons as well.

On September 28, 2021, Hughes drove her car to Battlefield Firearms in Orange County to buy a Glock 43X handgun.  Battlefield Firearms only sold firearms: it did not sell anything else that looked like a firearm, but was not a firearm.  McLeer, Lohr, and a person known as "C. J." rode with Hughes, but they remained in the car while she went inside the store.  Upon entering, Hughes called McLeer's cell phone and, using Facetime, she began to communicate with McLeer as "she went right to the Glocks."  Hughes told Maria Wyatt, the co-owner of Battlefield Firearms, that she was buying her first firearm, and she stated that she wanted to look at the Glock 43X.  Since Hughes seemed to be a young and inexperienced gun purchaser, Wyatt tried to talk her into buying a firearm

that was less expensive and would be safer for a novice gun owner. Hughes, however, was on the phone at this time, and she "was pretty set on the [Glock] 43X." So, Hughes and Wyatt filled out the federal and state transaction forms and Hughes purchased the firearm. The serial number for this Glock 43X was BUHV698. Upon returning to her car, Hughes removed the Glock pistol from its paper bag and then McLeer took it "to check it out." During the return trip to their residence, McLeer continued to possess the firearm. After September 28, 2021, Lohr saw McLeer handling this Glock pistol on more than one occasion. She also saw McLeer discharging a firearm through a window from inside her house, but she could not tell if the firearm was the Glock that Hughes had purchased.

On October 31, 2021, as part of a criminal investigation, members of the Virginia State Police executed a search warrant for the residence on Mountain Track Road. This search warrant called for the seizure of cell phones found on the premises. During this search, the police photographed and recovered an iPhone resting on a freezer inside the kitchen. The police also photographed and recovered spent cartridges found in a master bedroom and connected bathroom, two Virginia identification cards, and a health insurance card on the nightstand. Both identification cards and the health insurance card were issued for McLeer. During the trial, Clark testified that the bathroom containing the spent cartridges was the same bathroom from which he saw McLeer discharge a firearm through the window.

Using forensic digital tools and computer software, Special Agent Bethany Finch extracted data and identifying information from the cell phone and compiled the information into a report. Among the artifact information identifying the cell phone was the phrase, "Kevin's phone" and the email address: "mcleerkevin@gmail.com." Finch also recovered photographs showing cash, firearms, and McLeer holding cash, a firearm, or both at his mother's house. One of the handguns in the photographs was visibly marked with the serial number "BUHV698." In addition to the

- 3 -

photographs of McLeer, Finch also recovered two video recordings in which McLeer was present. According to the report, all the photographs were generated in September 2021. The two video recordings were generated in late October 2021.

An Orange County grand jury returned an indictment charging that, on or about October 30, 2021, McLeer knowingly and intentionally possessed or transported a firearm after being convicted of a violent felony, in violation of Code § 18.2-308.2. The Commonwealth later amended this indictment to charge McLeer with the same offense, but "[d]uring a period of time running from on or about September 1, 2021 to October 29, 2021."

While Lohr testified that some of the firearms in the house belonged to her father, she and Clark believed that two of those guns belonged to McLeer. Not only had both Lohr and Clark seen McLeer with the firearms, but they also saw him actively use at least one of them. On one occasion, Clark saw McLeer fire a gun through a bathroom window while he was inside the house. Both Lohr and Clark believed, however, that two of these guns belonged to McLeer, having seen McLeer with them. They also believed that these guns were real firearms because they had seen McLeer discharge them outside Lohr's house.

## II. Motion to Exclude Evidence Obtained from Search of Cell Phone

On the day of his jury trial, McLeer orally moved to exclude the evidence that Finch obtained from her search of his cell phone because the search warrant issued for his residence, which authorized a search for and seizure of cell phones on the premises,[2] was not specific enough to justify a search of his cell phone's contents. At first, the trial court decided to take this motion under advisement. The court reasoned that it "need[ed] to hear more evidence and argument with

---

[2] The record on appeal does not include this search warrant; however, the prosecutor stated at a pretrial hearing on McLeer's prior motion *in limine* that this search warrant authorized the search "to *get* shell casings, bullets, cartridges, firearms, DNA, splatter, *cellphones*, and any other evidence as it pertains to the crime of homicide." (Emphases added).

- 4 -

regard to the nature of the search warrant and exactly what it called for" to determine whether Code § 19.2-53(B) authorized a search of McLeer's cell phone. However, at the Commonwealth's request for a ruling on the motion given that "a lot of [the Commonwealth's] witnesses" would be testifying about the results of the search warrant, the trial court agreed to hear arguments on the motion. At the conclusion of the arguments, defense counsel conceded that the search warrant issued for McLeer's residence "did specify cellphones as items to be seized." Counsel then stipulated that the warrant "did call for a search for the particular cellphone in question." Given this factual stipulation, the trial court held that Code § 19.2-53(B) applied to the search warrant and denied the motion *in limine*.

III. Motions to Strike the Evidence as Insufficient to Prove Possession of a Firearm

At the close of the Commonwealth's case-in-chief, McLeer moved to strike the evidence. While conceding that the Glock handgun that Hughes purchased was a firearm, McLeer argued that the Commonwealth failed to prove actual or constructive possession of an actual firearm beyond a reasonable doubt. On the one hand, he argued that the photographs or videos showing him holding an object resembling a firearm object failed to prove that "the object actually [was] a firearm." Additionally, he argued that the photographs containing an actual firearm were either photographs of the firearm by itself or photographs of the firearm in "somebody's lap," but because he was not identified in those photographs, they did not show that he ever actually possessed a firearm. The trial court, however, disagreed. Noting that there was "direct evidence" establishing that Hughes bought a firearm, which Battlefield Firearms co-owner Wyatt "positively identified" as a firearm, and then gave it to McLeer, the trial court found that the Commonwealth had established a "prima facie case of possession." The court also found that the photographs extracted from McLeer's cell phone, especially Com. Ex. # 15 through Com. Ex. # 25, constituted "quite a bit of evidence . . . of a

circumstantial nature" proving that what McLeer possessed "was, in fact, a firearm." Accordingly, the court denied the motion to strike.

In his defense, McLeer called Lieutenant Brian Seal of the Orange County Sheriff's Office. McLeer's counsel asked Lieutenant Seal questions about his experience in encountering and dealing with pistols that are not firearms, but physically resemble firearms, e.g., BB guns or airsoft pistols. Lieutenant Seal testified that he would treat a pistol having the appearance of a firearm as an actual firearm until he could determine otherwise.

Following Lieutenant Seal's testimony, McLeer renewed his motion to strike the evidence based on his previous argument. The trial court, in turn, denied this motion based on its previously stated grounds. This appeal follows.

ANALYSIS

McLeer alleges that the trial court committed two reversible errors during his jury trial. In his first assignment of error, he alleges that the court erred in denying his motion *in limine* to exclude the contents of his cell phone. In his second assignment of error, he alleges that the trial court erred in denying his motion to strike the evidence as insufficient to prove that he was guilty of possessing a firearm after being convicted of a violent felony. As explained below, we cannot entertain the arguments within the first assignment of error on appeal, and we find that the second assignment of error is wholly without merit.

I. Validity of Finch's Search of McLeer's Cell Phone

McLeer's first assignment of error is not subject to appellate review. During his oral motion *in limine* to exclude the contents of his cell phone, which was a de facto motion to suppress, he argued that the search warrant issued for his residence, which authorized a search for and seizure of cell phones on the premises, was not specific enough to justify the search of his cell phone's contents. On appeal, McLeer argues that the trial court erred in denying the motion to exclude the

contents of his cell phone because the warrant authorizing the search was not "particularized" and violated the Fourth Amendment "principle[s] set forth in *Riley* and *Kyllo*." The argument presented on brief, though tangentially raised in the trial court, was not made pursuant to the motion to exclude the contents of McLeer's cell phone. Rather, the argument that the search of the cell phone violated the Fourth Amendment was made in support of his motion for a continuance. Indeed, his argument at trial was not that the search itself violated the Fourth Amendment, but rather that the statute authorizing the search was itself unconstitutional. The court denied the motion for a continuance, and because McLeer's argument regarding the constitutionality of the search under *Riley v. California*, 573 U. S. 373 (2014), was not made in support of his motion to exclude the contents of the phone, this Court may not consider that argument as the basis for his assignment of error on appeal. *See* Rule 5A:18. Furthermore, McLeer waived the denial of his motion *in limine* for appeal when, after stipulating that the search warrant in question authorized a search for the particular cell phone in question, he did not object to the trial court's ruling on the motion.

In addition, the record reflects that McLeer never introduced a copy of the search warrant and supporting affidavit for his residence. Thus, even if McLeer had not stipulated in the trial court that the search warrant was sufficiently particularized as to the cell phone in question, he waived it by failing to introduce essential evidence for addressing it on appeal. "The burden is upon the appellant to provide [the appellate court] with a record which substantiates the claim of error. In the absence [of a sufficient record], we will not consider the point." *Dixon v. Dixon*, 71 Va. App. 709, 716 (2020) (alterations in original) (quoting *Robinson v. Robinson*, 50 Va. App. 189, 197 (2007)). The Commonwealth's representation at a pretrial hearing that the search warrant at issue authorized "the search to get shell casings, bullets, cartridges, firearms, DNA, splatter, cellphones, and any other evidence as it pertains to the crime of homicide" was insufficient as a substitute for the search warrant and affidavit. *See Smith v. Commonwealth*, 16 Va. App. 630, 635 (1993) ("An appellate

court must dispose of the case upon the record and cannot base its decision upon appellant's petition or brief, or statements of counsel in open court. We may act only upon facts contained in the record.").

As we have consistently stated, "[t]he Court of Appeals will not consider an argument on appeal which was not presented to the trial court." *Aponte v. Commonwealth*, 68 Va. App. 146, 163 n.8 (2017) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)). "[M]aking one specific argument on an issue does not preserve a separate legal point on the same issue for review." *Banks v. Commonwealth*, 67 Va. App. 273, 285 (2017) (quoting *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc)). "Under settled principles, the 'same argument must have been raised, with specificity, at trial before it can be considered on appeal.'" *Pulley v. Commonwealth*, 74 Va. App. 104, 125 (2021) (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011)). "A party will not be allowed to specify one or more grounds of objection to evidence offered in the trial court and rely upon other grounds in the appellate court. He is regarded as having waived all other objections to the evidence except those which he pointed out specifically." *Branch v. Commonwealth*, 225 Va. 91, 96 (1983) (quoting *Jackson v. C. & O. Ry. Co.*, 179 Va. 642, 650-51 (1942)). Moreover, "an issue abandoned at trial may not be resurrected on appeal, and an appellate court may not 'recast' an argument made in a lower court into a different argument upon which to base its decision." *Clifford v. Commonwealth*, 274 Va. 23, 25 (2007) (quoting *Commonwealth v. Shifflett*, 257 Va. 34, 44 (1999)).

In his brief, McLeer does not ask this Court to apply the "ends of justice" or "good cause" exceptions of Rule 5A:18 to his first assignment of error. Whenever an appellant does not ask this Court to invoke the "ends of justice" exception to Rule 5A:18, this Court "will not consider, *sua sponte*, a 'miscarriage of justice' argument under Rule 5A:18," especially when there is nothing in the record to support such an argument. *Edwards*, 41 Va. App. at 761. That

is certainly the case here. We, therefore, affirm the trial court's denial of McLeer's motion *in limine* to exclude the contents of his cell phone.

## II. Sufficiency of Evidence to Convict McLeer of Being a Felon in Possession of a Firearm

McLeer contends that the trial court erred in denying his renewed motion to strike because, "even when [the evidence is] considered in the light most favorable to the prevailing party at trial, the trial judge should have ruled that no reasonable jury could find that the Commonwealth proved that [he] possessed a firearm beyond a reasonable doubt." Given the overwhelming evidence of McLeer's guilt admitted at the trial, we disagree.

### A. Principles of Appellate Review

"When faced with a challenge to the sufficiency of the evidence, [this Court must] 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence' to support it." *Crowder v. Commonwealth*, 41 Va. App. 658, 662 (2003) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)). We must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Kelly*, 41 Va. App. at 257 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "If there is evidence to support the conviction, an appellate court is not permitted to substitute its own judgment for that of the finder of fact, even if the appellate court might have reached a different conclusion." *Conrad v. Commonwealth*, 31 Va. App. 113, 123 (1999) (en banc) (quoting *Presley v. Commonwealth*, 256 Va. 465, 466 (1998)). Thus, when a criminal conviction is by jury, "we review the jury's decision to see if reasonable jurors could have made the choices that the jury did make" and "[w]e let the decision stand unless we conclude no rational juror could have reached that decision." *Pease v. Commonwealth*, 39 Va. App. 342, 355 (2002) (en banc).

In determining whether a trial court's judgment was plainly wrong or unsupported by the evidence, this Court must view "the evidence in the light most favorable to the Commonwealth, as 'the prevailing party in the trial court.'" *Cornelius v. Commonwealth*, 80 Va. App. 29, 34 n.2 (2024) (quoting *Kelley v. Commonwealth*, 69 Va. App. 617, 624 (2019)). "In doing so, the Court discard[s] all evidence of the accused that conflicts with that of the Commonwealth and regard[s] as true *all credible evidence* favorable to the Commonwealth and all fair inferences reasonably deducible from that evidence." *Id.* (alterations in original) (emphasis added). We must consider, therefore, both direct and circumstantial evidence in the record. *See Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) ("Our inquiry does not distinguish between direct and circumstantial evidence, as the fact finder itself 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003))).

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). "However, '[w]hether the Commonwealth relies upon either direct or circumstantial evidence, it is not required to disprove every conceivable possibility of innocence, but is, instead, required only to establish guilt of the accused to the exclusion of a reasonable doubt.'" *Cantrell v. Commonwealth*, 7 Va. App. 269, 289 (1988) (alteration in original) (quoting *Bridgeman v. Commonwealth*, 3 Va. App. 523, 526-27 (1986)). Thus, "the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Hamilton v. Commonwealth*, 16 Va. App. 751, 755 (1993). Whether a hypothesis of innocence is reasonable is a question of fact, *Cantrell*, 7 Va. App. at 290, and a fact finder's "rejection of a hypothesis of innocence 'is binding on appeal unless plainly wrong,'" *Ervin v. Commonwealth*, 57 Va. App. 495, 519 (2011) (quoting

*Archer v. Commonwealth*, 26 Va. App. 1, 13 (1997)), "*even* if there is 'some evidence to support' the hypothesis," *id.* (quoting *Hudson*, 265 Va. at 513).

"[D]etermining the credibility of witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Maldonado v. Commonwealth*, 70 Va. App. 554, 562 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). Thus, at a jury trial,

> [t]he credibility of witnesses is a matter for the jury to decide, weighing such factors as the appearance and manner of the witnesses on the stand, their intelligence, their opportunity for knowing the truth and observing the things about which they testify, their interest in the outcome of the case, their bias, and if any had been shown, their prior inconsistent statements and prior criminal convictions.

*Mullis v. Commonwealth*, 3 Va. App. 564, 571 (1987) (citing *Zirkle v. Commonwealth*, 189 Va. 862, 870 (1949)). The conclusions of the jury "on issues of witness credibility 'may only be disturbed on appeal if this Court finds that [the witness'] testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief."'" *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011) (alteration in original) (quoting *Robertson v. Commonwealth*, 12 Va. App. 854, 858 1991)).

### B. Knowing and Intentional Possession of a "Firearm"

Code § 18.2-308.2(A) provides, in pertinent part, that "[i]t shall be unlawful for (i) any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm." It further provides that "any person who violates this section by knowingly and intentionally possessing or transporting any firearm and who was previously convicted of a violent felony as defined in [Code] § 17.1-805 shall be sentenced to a mandatory minimum term of imprisonment of five years." *Id.* A conviction under this statute "requires proof beyond a reasonable doubt of *either* actual or constructive possession of the firearm." *Hancock v. Commonwealth*, 21 Va. App. 466, 468 (1995) (emphasis added). Thus, "[a] conviction for the

unlawful possession of a firearm by a felon can be supported exclusively by evidence of constructive possession. Evidence of actual possession is not necessary." *Rawls v. Commonwealth*, 272 Va. 334, 349 (2006). Whether actual or constructive possession, however, "[l]iability under Code § 18.2-308.2 requires proof that the accused 'knowingly and intentionally possessed . . . any firearm.' Thus, the Commonwealth must prove a defendant's *actual* knowledge of the firearm." *Hancock*, 21 Va. App. at 469 (second alteration in original) (emphasis added). It must establish that "the defendant intentionally and consciously possessed the [firearm] with knowledge of its nature and character." *Morris v. Commonwealth*, 51 Va. App. 459, 465-66 (2008). The Commonwealth does not need to prove, however, that the firearm was "'operable,' 'capable' of being fired, or had the 'actual capacity to do serious harm.'" *Perry v. Commonwealth*, 61 Va. App. 502, 513 (2013) (quoting *Armstrong v. Commonwealth*, 263 Va. 573, 584 (2002)). "[T]o sustain a conviction for possessing a firearm in violation of Code § 18.2-308.2, the evidence need show only that a person subject to the provisions of that statute possessed an instrument which was designed, made, and intended to expel a projectile by means of an explosion." *Id.*

Actual possession is defined as the "physical occupancy or control over property." *Brown v. Commonwealth*, 37 Va. App. 507, 521 (2002) (quoting *Actual Possession*, *Black's Law Dictionary* (7th ed. 1999)). "Physical possession giving the defendant 'immediate and exclusive control' is sufficient" to establish actual possession. *Hunley v. Commonwealth*, 30 Va. App. 556, 562 (1999) (quoting *Ritter v. Commonwealth*, 210 Va. 732, 741 (1970)). "A suspect's actual, physical possession of [a firearm] permits the inference that he or she knowingly possessed [it] aware of [its] illegal nature and character." *Morris*, 51 Va. App. at 466. "[P]roof of 'actual' possession of a firearm . . . may be established by circumstantial evidence, direct evidence, or both." *Byers v. Commonwealth*, 23 Va. App. 146, 150 (1996) (citing *Yarborough v. Commonwealth*, 247 Va. 215, 216-19 (1994)).

To establish constructive possession, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the [firearm] and that it was subject to his dominion and control." *Terlecki v. Commonwealth*, 65 Va. App. 13, 24 (2015) (quoting *Drew v. Commonwealth*, 230 Va. 471, 473 (1986)). Constructive possession "may be joint" and "need not always be exclusive. The defendant may share [the firearm] with one or more." *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009) (quoting *Ritter v. Commonwealth*, 210 Va. 732, 741 (1970)). "[P]roximity to the firearm[] is a circumstance probative of possession and may be considered as a factor in determining whether the defendant possessed the firearm." *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008). "[T]he issue of constructive possession 'is largely a factual one and must be established by evidence of the acts, declarations and conduct of the accused.'" *Smallwood*, 278 Va. at 631 (quoting *Ritter*, 210 Va. at 743).

### C. McLeer's Actual and Constructive Possession of an Actual Firearm

In this case, the trial court was not plainly wrong in overruling McLeer's motion to strike at the conclusion of all the evidence. During its case-in-chief, the Commonwealth put on more than enough evidence for the jury to find that McLeer knowingly and intentionally possessed a "firearm" in Orange County, Virginia during the period beginning on September 1, 2021, and ending on October 29, 2021. In four different ways, the Commonwealth proved McLeer's guilt.

First and foremost, through the testimony of Lohr and Wyatt, the Commonwealth presented direct evidence establishing that McLeer actually possessed an actual "firearm" on September 28, 2021. On that date, while seated in the front seat of Hughes's car at Battlefield Firearms in Orange County, McLeer took from Hughes a "firearm" that she had just purchased from Wyatt. The firearm was a Glock 43X handgun having a serial number of BUHV698. After taking the firearm from Hughes, McLeer continued to possess it as they traveled back to their residence. Later, after

- 13 -

the police executed a search warrant issued for McLeer's residence, which specified "cellphones" as items to be seized, Finch retrieved from a cell phone the photograph of a black Glock pistol having the serial number of BUHV698. This cell phone was an iPhone in plain view on a freezer inside the kitchen. According to data retrieved from the cell phone, this photograph was created on September 28, 2021 at 9:29 p.m. Also, according to identifying information retrieved from the cell phone, it was "Kevin's iPhone" and it contained an email address of "mcleerkevin@gmail.com."

Second, through the testimony of Lohr and Clark, the Commonwealth established that, at other times during September and October 2021, McLeer actually possessed an actual firearm at his Mountain Track Road residence. Both testified that they had witnessed McLeer discharging a firearm through a window in the house, and Clark recalled that it was a bathroom window. During the execution of the search warrant on October 30, 2021, police found shell casings in a bathroom adjacent to the master bedroom where McLeer's two Virginia identification cards and a health insurance card were found on a nightstand.

Third, through the admission of photographs that Finch had retrieved from "Kevin's iPhone," the Commonwealth established that photographs of handguns were taken during September 2021. Some of these photographs only showed firearms or firearms in the lap of an unidentified person, but others showed a man holding or pointing a handgun or sitting on a bed with a handgun near him. According to Clark, the man in the photographs was McLeer and these photographs showed McLeer at his mother's house. The serial number that was visible on one of the handguns in the photographs was BUHV698. Although the police did not recover any firearms from McLeer's residence and only one photograph of a handgun was used to show the serial number identifying it as the firearm purchased by Hughes at Battlefield Firearms on September 28, 2021, a rational trier of fact was entitled to infer from the totality of the evidence that the handgun

shown in each of the photographs was an actual firearm that McLeer possessed during September and October 2021.

Fourth, given Lohr's and Wyatt's testimony about Hughes' behavior before, during, and after her purchase of the Glock 43X pistol at Battlefield Firearms on September 28, 2021, the jury was entitled to infer that Hughes engaged in a "straw purchase" for McLeer.[3] As the rational trier of fact, the jury was entitled to accept Wyatt's testimony suggesting that Hughes was a first-time gun purchaser who went directly to the Glock handguns upon entering the store and insisted on buying the Glock 43X even though Wyatt tried to persuade her to consider a safer gun. The jury also was entitled to accept the combined testimony of Lohr and Wyatt suggesting that Hughes used her cell phone to communicate with McLeer while inside the store and to receive instructions about purchasing the Glock 43X pistol. And finally, given Lohr's testimony that Hughes removed the Glock pistol from its bag when she returned to her vehicle and then McLeer took it from her and kept it while they traveled back to their residence, the jury was entitled to infer that Hughes bought the handgun for McLeer because, as a convicted felon, he could not do so. Given this inference of a straw purchase, the jury was entitled to find that McLeer constructively possessed the firearm as soon as Hughes took possession of it because, by directing Hughes's purchase of the firearm, he had exercised control over it. *See United States v. Ellis*, 622 F.3d 784, 794 (7th Cir. 2010) ("a gang leader constructively possesses a gang firearm when he has knowledge of the firearm's existence and intentionally directs the actions of those who physically possess it").

---

[3] *See Straw Purchase*, *Black's Law Dictionary* (10th ed. 2014) (defining "straw purchase" as "[s]omeone's buying of a firearm for another who is prohibited to make such a purchase because of a prior conviction, an order of protection, or some similar judicially imposed proscription").

In his brief, McLeer barely acknowledges the testimony of Hughes and Clark and he does so without mentioning their names.[4] Instead, he focuses on the firearm photographs recovered from the cell phone and argues that the Commonwealth's evidence was insufficient because it only proved his proximity to a firearm. Focusing on the absence of a recovered firearm and citing *Armstrong*, he also argues that the Commonwealth failed to prove that he ever possessed a "firearm," as defined as an "object made to expel a projectile by the combustion of gunpowder or other explosive." He thus argues that the photographs of his holding of firearms were "without foundation that the objects were in fact firearms." He also argues that some of the photographs did not even show him as the person holding a firearm.

By ignoring nearly all of Lohr's testimony and Clark's testimony, McLeer asks this Court to consider only some of the Commonwealth's evidence in deciding whether his conviction was supported by sufficient evidence. In short, he asks us to ignore our well-established principles of appellate review. This we cannot do. We cannot pick and choose what evidence to consider and what evidence not to consider. "When considering the sufficiency of the evidence on appeal of a criminal conviction, we must view *all* of the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom." *Grites v. Commonwealth*, 9 Va. App. 51, 53 (1989) (emphasis added) (quoting *Traverso v. Commonwealth*, 6 Va. App. 172, 176 (1988)). We cannot disturb the jury's verdict on appeal "unless it is plainly wrong or without evidence to support it." *Id.* In this case, we cannot disturb the verdict.

---

[4] McLeer's only reference to Hughes's testimony is this statement: "Likewise, testimony of McLeer's presence in a vehicle when a companion of his returned to it after purchasing a firearm proves mere proximity but nothing further." The Commonwealth assumes that the following statement is a reference to Clark: "The Commonwealth based its case on the testimony of a convicted felon who could have been charged with the same crime had police linked the firearms to *him*." (Emphasis added).

CONCLUSION

For the foregoing reasons, we find that this appeal assigns error to the trial court's denial of a motion *in limine* that is not reviewable and it assigns error to the trial court's denial of a motion to strike that is not reversible. Accordingly, we affirm McLeer's conviction.

*Affirmed.*